# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Juan Carlos Zapata<br>Patricia Ultreras<br>1660 Tapir Circle Ventura, CA 93003<br>TELEPHONE NO.: (805) 452-5736   FAX NO.:<br>ATTORNEY FOR *(Name):* | SUPERIOR COURT<br>**FILED**<br>DEC 17 2009<br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>BY: M. SOTO , Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: SUPERIOR COURT OF CALIFORNIA
MAILING ADDRESS: COUNTY OF VENTURA
CITY AND ZIP CODE: HALL OF JUSTICE, ROOM 210
BRANCH NAME: 800 SOUTH VICTORIA AVENUE
VENTURA, CA 93009

CASE NAME:
Juan Carlos Zapata Patricia Ultreras Vs Washington Mortgage Investment Corporation et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | 56-2009-00364081-CU-OR-VTA<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation**
*(Cal. Rules of Court, rules 3.400–3.403)*
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12-17-09

Juan Carlos Zapata Patricia Ultreras
*(TYPE OR PRINT NAME)*

*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

Exhibit A, Page 5

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT: Harbourton Mortgage Investment
(AVISO AL DEMANDADO): Corporation; and
Aurora Loan Services; and Robert E. Weiss
Incorporated; and

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):
Juan Carlos Zapata
Patricia Ultreras

| FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE) |
|---|
| VENTURA SUPERIOR COURT **FILED** DEC 17 2009 MICHAEL D. PLANET Executive Officer and Clerk BY: M. SOTO Deputy |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: SUPERIOR COURT OF CALIFORNIA
(El nombre y dirección de la corte es): COUNTY OF VENTURA

HALL OF JUSTICE, ROOM 210
800 SOUTH VICTORIA AVENUE

CASE NUMBER:
56-2009-00364081-CU-OR-VTA

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Juan Carlos Zapata (805)452-57
Patricia Ultreras
1660 Tapir Circle
Ventura, CA
93003

DATE: DEC 17 2009         Michael D. Planet        Clerk, by    M. SOTO                    , Deputy
(Fecha)                                           (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit A, Page 6

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☐ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Ugie Company; and countrywide bank, N.A.; and Bank of America, N.A.; and MERS; and any subsidiaries of the above named defendants; and any known or unknown John does.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit A, Page 7

_Petricia Ultreras_

VN 027

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)  Telephone Number | FOR COURT USE ONLY |
|---|---|
| _Ivan Carlos Zapata_  ( 805 ) 452-5736  _1660 Tapir Circle_  E-MAIL ADDRESS _Ventura, CA  93003_  ATTORNEY FOR (Name): | VENTURA SUPERIOR COURT  **FILED**  DEC 17 2009  BY: M. SOTO  Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

☑ 800 SOUTH VICTORIA AVE. VENTURA, CA 93009

☐ 3855 – F ALAMO ST. SIMI VALLEY, CA. 93063-2110

PLAINTIFF/PETITIONER _Ivan Carlos Zapata, Patricia Ultreras_

DEFENDANT/RESPONDENT _Harbourton Mortgage Corporation et al_

| DECLARATION FOR COURT ASSIGNMENT  (Family Law and Unlawful Detainer and all other General actions ONLY) | CASE NUMBER:  56-2009-00364081-CU-OR-VTA |
|---|---|

Family Law, Domestic Violence, Paternity, Harassment, Unlawful Detainer, and all other General Civil actions presented for filing MUST be accompanied by this declaration.

The undersigned declares that the above entitled matter is filed for proceedings in the:

☐ East County Division, 3855 – F Alamo St., Simi Valley, Ca 93063 (Based upon Zip Code designation.)

☐ 91301   ☐ 91302   ☐ 91304   ☐ 91307   ☐ 91360   ☐ 91361 (Family Law Only)
☐ 91362   ☐ 91377   ☐ 93020   ☐ 93021   ☐ 93062   ☐ 93063
☑ 93064   ☐ 93065   ☐ 91363

☑ Ventura Division, 800 S. Victoria Ave., Ventura, Ca 93009 (Venue does NOT fall within the Zip Codes above but is within Ventura County .

For the checked reason:

| | |
|---|---|
| ☐ Contract | Performance in the division is expressly provided for |
| ☐ Equity | The cause of action arose within the division |
| ☐ Eminent Domain | The property is located within the division |
| ☐ Family Law | Plaintiff, defendant, petitioner or respondent resides within the division |
| ☐ Harassment | Plaintiff, defendant, petitioner or respondent resides within the division |
| ☐ Mandate | The defendant functions wholly within the division |
| ☐ Name Change | The petitioner resides within the division |
| ☐ Paternity | Plaintiff, defendant, petitioner or respondent resides within the division |
| ☐ Personal Injury | The injury occurred within the division or the defendant resides within the division |
| ☐ Personal Property | The property is located within the division or the defendant resides within the division |
| ☐ Prohibition | The defendant functions wholly within the division |
| ☐ Review | The defendant functions wholly within the division |
| ☐ Title to Real Property | The property is located within the division |
| ☐ Unlawful Detainer | The property is located within the division |
| ☐ Domestic Violence | Plaintiff, defendant, petitioner or respondent resides with the division |
| ☑ Civil not otherwise specified | _Quiet Title and demand for trial by jury_ |
| | (Venue Rule Applicable) |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the division:

Name: _Real Property_   Address: _1660 Tapir Circle  Ventura, CA 93003_

Upon information and belief, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: _12-17-09_        _[signature] Patricia Ultreras_
                        Signature of Attorney/Party

**DECLARATION FOR COURT ASSIGNMENT**

Mandatory Form
VN027[Rev 1/08]

DO NOT BACK ASSIGNMENT
☐ UNLAWFUL DETAINER
☐ ECONOMIC
☑ STANDARD
☐ UNINSURED MOTORIST
☐ TRACT COORD TO NOTIFY

READ THE VENTURA COUNTY
LOCAL RULES THAT GOVERN
COMPLIANCE WITH SASE TRACT

ASSIGNED COURT _____

VENTURA
SUPERIOR COURT
FILED

DEC 17 2009

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____, Deputy
M. SOTO

1  Juan Carlos Zapata, and
2  Patricia Ultreras
   1660 Tapir Circle
3  Ventura, California 93003
   805-452-5736

4              SUPERIOR COURT OF CALIFORNIA

5                    COUNTY OF VENTURA

6
7  Real Party(s) In Interest(s):
   JUAN CARLOS ZAPATA, et al;
8  PATRICIA ULTRERAS
                        Plaintiffs,
9
   Vs
10
   HARBOURTON MORTGAGE INVESTMENT
11 CORPORATION; and
   AURORA LOAN SERIVCES; and
12 ROBERT E WEISS INCORPORATED; and
   UGIE COMPANY.; and COUNTRYWIDE
13 BANK, N.A.; and
   BANK OF AMERICA, N.A.; and
14 MERS; and
   ANY SUBSIDIARIES OF THE ABOVE
15 NAMED DEFENDANTS; and
   ANY KNOWN OR UNKNOWN JOHN DOES.
16
17              Defendants

Case No.:   56-2009-00364081-CU-OR-VTA

VERIFIED COMPLAINT FOR

QUIET TITLE AND

DEMAND FOR

TRIAL BY JURY

Judge:

18   **Comes now,** Juan Carlos Zapata, sentient being, agent, real party in interest, and as

19 attorney-in-fact authorized to represent ens legis fiction JUAN CARLOS ZAPATA, and Patricia

20 Ultreras, sentient being, agent, real party in interest, and as attorney-in-fact authorized to represent

21 ens legis fiction PATRICIA ULTRERAS, et al, hereinafter "Petitioners", hereby files this

22 Verified Complaint for Quiet Title and Demand for Trial By Jury pursuant California Code of

23 Civil Procedure "Title 10. Actions in Particular Cases Chapter 4. Quiet Title". We are in correct

24 public capacity as beneficiary to the Original Jurisdiction, a sovereign man and woman being of

25 majority age, competent to testify, sui juris, without obligation of vassalage or fealty, upon the

26 land. Our "yes" be "yes" , our "no" be "no", do state under penalty of perjury under the laws of

27 the United States of America and the State of California,  that the following truths and facts herein

28

are of first-hand personal knowledge, true, correct, complete, certain and not misleading, to the best of my knowledge, so help us GOD.

## PROPERTY DESCRIPTION

Physical Address:       1660 Tapir Circle, Ventura, CA 93003

Parcel ID Number:   131-0-180-055

Legal Description:

LOT 338 OF TRACT 2256-3, IN THE CITY OF VENTURA, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGE(S) 22 TO 26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

## JURISDICTION

Jurisdiction is conferred upon this Superior Court pursuant to California Code of Civil Procedure "Title 10. Actions in Particular Cases Chapter 4. Quiet Title", in that the claims alleged therein arise under the laws of the United States and the State of California. In addition, all parties are either domiciled or are doing business in the State of California.

The Superior Court has jurisdiction over Injunctive relief which is authorized by Californian Code of Civil Procedure "Title 7. Other Provisional Remedies in Civil Actions Chapter 3. Injunction" and accordingly asks for such relief either inclusive in this action, and/or as a separate Application for TRO.

## VENUE

The venue in this matter is proper as the subject property is located at 1660 Tapir Circle, Ventura, California 93003 and within the geographical bounds of the judicial district of the Superior Court of California, County of Ventura, and is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## PARTIES

Plaintiffs are a married couple who claim ownership of title, possession, and a financial interest in the property located at 1660 Tapir Circle, Ventura, California 93003.

Defendants:

**Regarding: DEED OF TRUST:**
MIN 100091200000083349
LOAN NO.: 11504015

1)    HARBOURTON MORTGAGE INVESTMENT CORPORATION, 1300 NORTH DUTTON AVENUE, SUITE A, SANTA ROSA CA 95401, and/or 2121 ALTON PARKWAY, SUITE 110, IRVINE, CA 92608

2)    ROBERT E WEISS INCORPORATED, AS TRUSTEE, ATTN: FORECLOSURE DEPARTMENT, 920 VILLAGE OAKS DRIVE, COVINA, CA 91724

3)    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), a Delaware Corporation with an address of P.O. Box 2026, Flint MI, 48501;

4)    AURORA LOAN SERVICES, 1035 Park Meadows Drive, Littleton, CO 80124

**On DEED OF TRUST AND ASSIGNMENT OF RENTS**
MIN 1000157-0006257365-0

5)    UGIE COMPANY, 230 N. Elm, Greensboro, North Carolina 27401

6)    COUNTRYWIDE BANK, N.A., with an address of 1199  North Fairfax St. Ste 500, Alexandria, VA 22314; whose subsidiaries include:

COUNTRYWIDE, P.O. Box 10219, Van Nuys, CA 91410-0219;

COUNTRYWIDE HOME LOANS, INC., A CORPORATION existing under the laws of New York, with an addresses of 4500 Park Granada, MSN# SVB-314, Calabasas, CA 91302-1613; and P.O. Box 10423, Van Nuys, CA 91410-0423

7)    BANK OF AMERICA, N.A. with and address of P.O. Box 5170, Simi Valley, CA 93062; whose subsidiaries include:

BAC HOME LOANS SERVICING, L.P., and

BAC HOME LOANS

9)      ANY KNOWN OR UNKNOWN JOHN DOES    pertaining the alleged loan(s) and property in question.

## FIRST CAUSE OF ACTION:
## INJUNCTIVE RELIEF

1.      Plaintiffs alleges that the seizure and sale of his property would constitute a violation of equal protection and due process of law concerning the right of the people to ownership and enjoyment all the benefits of contract secured to them by California Code of Civil Procedure Title 7 Chapter 3 § 525-534; and by 42 U.S.C. §§1981 and 1982, which rights are actionable under 42 U.S.C. §1983 and 1988(a).

2.      Defendants seek to non-judicially foreclose upon the Property pursuant  to the Deed of Trust. For reasons alleged herein, non-judicial foreclosure on the Property is illegal and violates both state and federal law.

3.      Plaintiffs are informed and believes and therefore alleges that Defendants will proceed on the sale of the property unless pursuant the Deed of Trust and Notice of Trustee Sale unless and until retained and rejoined by order of the court.

4.      Non judicial foreclosure of the Property will cause Plaintiffs great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that Plaintiffs would suffer the loss of his home.

5.      Plaintiffs have no adequate remedy at law for Defendants' non-judicial foreclosure of his property.

6.      Plaintiffs are therefore entitled to a temporary restraining order , preliminary injunction, and permanent injunction, enjoining all Defendants, their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from proceeding with the non-judicial foreclosure of Plaintiffs' Property, including the sale or attempted sale of Plaintiffs' Property.

## SECOND CAUSE OF ACTION:
## UNFAIR DEBT COLLECTION

Exhibit A, Page 12

## PRACTICES & PREDATORY LENDING INCLUDING TILA AND RESPA VIOLATIONS

7.     Plaintiffs are informed and believe and thereupon allege that the Defendants and each of them, in taking the actions aforementioned, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including not limited to Civil Code 1788(3) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V. §§ 1692 et seq, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617.

8.     The Court should determine whether or not the defendants have violated California state securities laws by fraudulent sales of previously sold and securitized (e.g., within the meaning of California Statutes, sold and transferred) notes and/or if in fact they are not selling them,  but merely transferring the collection rights under the servicing agreement.

9.     A judicial determination is appropriate to determine the Plaintiffs' rights and duties with regards to the property loans and/or foreclosure. A declaration of rights and duties of the parties by the court is necessary to determine the actual status and validity of the loan and any rights, duties, and/or obligations to be enforced.

10.    Plaintiffs are informed and believe that they alleged grounds for cancellation of the mortgage documents and deeds of trust for cause as stated herein and specifically as the character and relationship of the parties, the existence of the ground for recovery, including fraud, false representations, or impossibility of performance, defendants' failure to perform, and the inadequacy of a remedy at law.

11.    The court should declare that laches applies to bar the alleged debt collector, or, since the trustee failed to comply with the Fair Debt Collection Practices Act in order to proceed to trustee sale of the property, the trustee is equitably estopped from taking any further action against the subject property.

12.    There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics,

or taking unfair advantage of a borrower.

Since predatory lenders are constantly developing new techniques to take advantage of borrowers, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include engaging in aggressive, high pressure and/or misleading tactics. Defendants, and each of them, engaged in this kind of conduct toward the Plaintiffs.

Case No.: LC081846 filed in the Superior Court of the State of California for the County of Los Angeles County, Northwest District, addresses such predatory lending practices in that it alleges that COUNTRYWIDE engaged in deceptive practices in the sale of complex and risky loans to consumers; engaged in deceptive marketing practices to sell increasing numbers of loans; and as a result thousands of California Homeowners face foreclosure as in this instant matter or have lost their homes as rates were reset on their Adjustable Rate Mortgage (ARM) or rates increased on their Home Equity Line of Credit (HELOC). These same predatory lending practices have occurred regarding the mortgage loan and deed of trust pertaining to the subject property in this instant matter.

Case No.: LC081846 also contains allegations of violations of business and professions code section 17500(UNTRUE OR MISLEADING STATEMENTS), and section 17200(UNFAIR COMPETITION).

Case No.: LC081846 is herein and hereby incorporated into this complaint by reference.

13.     Defendants and each of them is directly or through agents or employees entities or persons actively involved in the extension of credit as said term is defined under the Truth in Lending Statute (TILA). Said Defendants subject to the requirements of the Truth in Lending Act have violated the requirements of the said act in that among other things:

1.     They have failed to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees.
2.     They have improperly retained funds belonging to Plaintiffs in amounts to be determined.
3.     To disclose the status of the ownership and holder in due course of said loans.

14.     Plaintiffs further allege that these violations are such as to require rescission and or cancellation of the loan herein and return of all funds received by Defendants from Plaintiffs. Plaintiffs have exercised his Rights of Rescission See Exhibits A, B, and C

15.     Plaintiffs allege that Defendants and each of them are such as to fall within the requirements of the Real Estate Settlement Procedures Act (RESPA)., and placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees, excess charges and amounts in excess of what would have been lawfully earned.

16.     In addition to the requirements of RESPA, LENDERS acted either individually or jointly as "Servicers as that term is used within the act and either individually or jointly violated the requirements of 12 USC 2605 (b) in that the servicing contract or duties there under were transferred or hypothecated without required notice.

17.     Plaintiffs allege that these violations are such as to require rescission and/or cancellation of the loan herein on and return of all funds received by Defendants from Plaintiffs.

18.     Plaintiffs further allege that they are entitled to compensatory damages and an amount to be determined at trial.

### THIRD CAUSE OF ACTION:
### FAILURE TO BE THE REAL PARTY IN INTEREST IN A FORCLOSURE ACTION
### (SEE FEDERAL RULES OF CIVIL PROCEDURE RULE 17(a))

19.     The real party in interest requirement is imposed by Fed. R. Civ. P. 17(a)(1), which states that "Every action shall be prosecuted in the name of the real party in interest." The real party in interest" is that party with the right to enforce a claim under the applicable substantive law, e.g., the Uniform Commercial Code, which has been codified in the State of California, among others. As a consequence, Plaintiffs allege that ROBERT E WEISS INCORPORATED is without authority to proceed with a non judicial foreclosure action in California.

Exhibit A, Page 15

## THIRD CAUSE OF ACTION: FAILURE TO BE THE HOLDER IN DUE COURSE OF THE ORIGINAL NOTE AND MORTGAGE IN A FORECLOSURE ACTION

20.    It is incumbent upon ROBERT E WEISS INCORPORATED alleging to represent Plaintiffs of record, HARBOURTON MORTGAGE INVESTMENT CORPORATION, to provide **prima facie evidence** of an original note, original mortgage, and to show that they are indeed the holder in due course of said note and mortgage; and/or any proof of assignment of agency of Plaintiffs to act for or on behalf of the holder in due course of the original note or mortgage. Defendants have failed to provide **prima facie evidence** (proof of facts) **in an affidavit** by the real party in interest that they are the holder in due course of the note and mortgage, or proof of assignment without which they are not authorized by law to proceed in a foreclosure action.

## FOURTH CAUSE OF ACTION: ILLEGAL SECURITIZATION OF THE NOTE

21.    Under US laws, securitization is illegal, primarily because it is fraudulent and caused specific violations of RICO, usury, and antitrust laws.   A promissory note falls under UCC Art. 3 as a negotiable instrument, once it is securitized, it falls under UCC Art. 8 & 9 as a security. FASB (FINANCIAL ACCOUNTING STANDARD BOARD) is part of GAAP (GENERAL ACCEPTED ACCOUNTING PRINCIPALS) which must be adhered to by Federally Chartered Banks. There is a Mandatory filing pursuant to Title12 U.S.C. 248 & 347. Form 2046 is the form used as the balance sheet as it relates to the original loan and shows the banks ledgering of the account. Plaintiffs alleges that form 2046 will show the off balance sheet entry an extinguishment of the loan. Deeds of trust and mortgage deeds are always registered as evidences of debt... notes are never registered.  Plaintiffs also alleges that HARBOURTON MORTGAGE INVESTMENT CORPORATION (listed on the DEED OF TRUST), and COUNTRYWIDE

HOME LOANS, INC. (listed on the DEED OF TRUST AND ASSIGNMENT OF RENTS) and/or MERS have illegally sold the note as an un-registered instrument. Selling un-registered securities is an automatic right of rescission of the original note and mortgage. (See <u>Case No.:</u> <u>LC081846</u> supra)

### FIFTH CAUSE OF ACTION: ULTRA VIRES

22.   The courts have long held that when a corporation executes a contract beyond the scope of its charter or granted corporate powers, the contract is void or "ultra vires" "It has been settled beyond controversy that a national bank, under federal Law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires . . ." <u>Howard & Foster Co. v. Citizens Nat'l Bank of Union</u>, 133 SC202, 130 SE 759(1926).

23.   "A bank is not the holder in due course upon merely crediting the depositors account." <u>Bankers Trust v. Nagler</u>, 229 NYS 2d 142, 143.

24.   "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, <u>constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages.</u>" <u>Barnsdall Refining Corp. v. Birnam Wood Oil Co.</u> 92 F 26 817.

25)   Plaintiffs allege that both HARBOURTON MORTGAGE INVESTMENT CORPORATION, and  COUNTRYWIDE HOME LOANS, INC., engaged in Fraud in the Inducement regarding their respective roles with the alleged primary loan and deed of trust, and the HELOC.

26.     Plaintiffs allege that both AURORA LOAN SERVICES, and UGIE COMPANY. engaged in Fraud in Fact regarding their respective roles with the alleged primary loan and deed of trust and the HELOC.

## STATEMENT OF FACTS

26.     On January 21, 2005, Juan Carlos Zapata purchased the property located at 1660 Tapir Circle , Ventura, California, by executing a promissory note in the amount of $472,000.00, signed in conjunction with a Deed of Trust.

27.     A DEED OF TRUST, dated January 21, 2005, was created and subsequently filed at the County Recorder's Office of Ventura County, California, and identified as LOAN NO.: 11504015,  with a MIN 100091200000083349 the amount of U.S.$322,400.00. Said Deed of Trust contains an Adjustable Rate Rider and a Planned Unit Development Rider.

28.     On Said DEED OF TRUST , the "Lender" is listed as COUNTRYWIDE BANK, N.A.; the " Beneficiary" and " Nominee" for the lender is listed as MERS; and the "Trustee" is listed as FIRST AMERICAN TITLE INSURANCE COMPANY.

28.     A MERS HELOC-CA Deed of Trust, entitled DEED OF TRUST AND ASSIGNMENT OF RENTS, dated January 19, 2006, was also created and subsequently filed at the County Recorder's Office of Ventura County, California, and identified as DOC ID #:00011362022401006, with a MIN 1000157-0006257365-0, in the amount of U.S.$149,600.00.

29.     On the MERS HELOC-CA Deed of Trust, the Lender  is listed as COUNTRYWIDE HOME LOANS, INC.; the " Beneficiary" and " Nominee" for the lender is listed as MERS; and the "Trustee" is listed as UGIE COMPANY.

Exhibit A, Page 18

30.     Defendants did not provide full-disclosure pursuant to Truth in Lending Act ("TILA"), the Real Estate Settlement Protection Act ("RESPA"), and the Home Owners Equity Protection Act ("HOEPA").

31.     Defendants AURORA LOAN SERVICES, MERS, AND ROBERT E. WEISS, INC. are all in receipt (verified by USPS Certified Mail) of a QUALIFIED WRITTEN REQUEST, dated October 12, 2009, to which they have answered or complied pursuant RESPA.

32.     Defendants are not the "holders" of the "original" promissory note and Deed of Trust.

33.     Plaintiffs,    because    of    both    HARBOURTON    MORTGAGE    INVESTMENT CORPORATION; and COUNTRYWIDE HOME LOAN, INC'S failure to disclose, pursuant to TILA and HOEPA, elected to rescind the contracts.

34.     Plaintiffs rescinded said contracts on November 6, 2009 by mailing to all known interested parties, pursuant to TILA, a **NOTICE OF RIGHT TO CANCEL, (See EXHIBIT A), NOTICE OF REMOVAL (See EXHIBIT B), and NOTICE OF REVOCATION OF POWER OF ATTORNEY (See EXHIBIT C)** as follows: Certified Mail No. 70091410000221117822; MERS, Nominee for the lender, Certified Mail No. 70091410000221117815; AURORA LOAN SERVICES,    Certified    Mail    No.    70081830000374842351;    and    ROBERT    E    WEISS INCORPORATED.., Trustee, Certified Mail No. 70091410000221117808, and Harbourton Mortgage Investment Corporation.

35)     Plaintiffs rescinded said contracts on November 6, 2009 by mailing to all known interested parties, pursuant to TILA, a **NOTICE OF RIGHT TO CANCEL, (See EXHIBIT A), NOTICE OF REMOVAL (See EXHIBIT B), and NOTICE OF REVOCATION OF POWER OF ATTORNEY (See EXHIBIT C)** as follows:  COUNTRYWIDE HOME LOANS, INC., Lender, Certified Mail No. 70083230000169404962; MERS, Nominee for the lender, Certified Mail No. 70091410000221117822; and; UGIE COMPANY, Certified Mail No. 70083230000169404993, ;

36.     Plaintiffs alleges that there is no delinquency, but rather, the debt has been paid in full.

37.     At a date the court deems appropriate to settle the matter.

38.     Plaintiffs timely files this **VERIFIED COMPLAINT FOR QUIET TITLE AND DEMAND FOR TRIAL BY JURY, AND MEMORANDUM OF LAW IN SUPPORT**; and seeks injunctive relief as deems appropriate to settle the matter.

39.     Plaintiffs are also filing a Lis Pendens at the County Recorder's Office, Ventura County, California pursuant California Code of Civil Procedure Title 10 Actions in Particular Cases Chapter 4 Quiet Title Section 760.010(b).

## TRIAL BY JURY

Plaintiffs demands a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact which may be triable as a matter of controlling case law, and Plaintiffs demand an advisory jury on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the deciding issues presented to the jury for resolution.

## PRAYER FOR RELIEF

Plaintiffs, Juan Carlos Zapata, prays for judgment against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and status of each party in relation to the property at 1660 Tapir Circle, Vevtura, California 93003, and the interests assigned to Plaintiffs in such property and the notes, transactions, and occurrences relating to the same.   Plaintiffs also seeks statutory damages, attorney's fees, and any other equitable relief including monetary damages. When the Lender is involved in wrongdoing, the penalty that a bank can face for violations of TILA and other State and Federal law can be as

Exhibit A, Page 20

much as triple damages calculated from the mortgage/loan transaction. Plaintiffs therefore

requests the same and/or as the court so adjudicates.

Respectfully submitted, this __17__ December, 2009

By: _____
    Juan Carlos Zapata

By: _____
    Patricia Ultreras

# " EXHIBIT A"

WHEN RECORDED MAIL TO:
Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

Above This Line for County Recorder's Use Only

November 6, 2009

### NOTICE OF RIGHT TO CANCEL
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultreras
   1660 TAPIR CIRCLE
   VENTURA, CALIFORNIA, 93003

To:

Harbourton Mortgage Investment Corporation
1300 North Dutton Ave. Ste A
Santa Rosa, Ca, 95401

           Certified Mail Number
           70091410000221117808

Aurora Loan Serivces
10350 Park Meadows Dr.
Littleton, Co., 80124

           Certified Mail Number
           70091410000221117815

MERS INC
PO Box 2026
Flint, MI, 4850 1-2026

           Certified Mail Number
           70091410000221117822

Robert E. Weiss, Inc.
920 Village Oaks Dr.
Covina, Ca, 91724

           Certified Mail Number
           70081830000374842351

**Re:**

Harbourton Mortgage Investment Corporation, Loan # 11504015; Parcel No. 131-0-180-055;
Commonly Known Address: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003.
Deed of Trust Record No.20050201-0024868 Book 20050201, Page(s): Dated 01-21-2005,
Recorded Date 02-01-2005 .

**Legal Description:**

LOT 338 OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.,
ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE
COUNTY RECORDER, VENTURA, CALIFORNIA.

**Parties:**

Juan Carlos Zapata and Patricia Ultreras Alleged Borrower/Trustor, hereinafter "Borrower," and
Harbourton Mortgage Investment Corporation Alleged Lender, hereinafter "Lender(s)," and,
Aurora Loan Services, Robert E. Weiss, Inc.(Law Firm). Alleged Assignee of Deed of Trust,
hereinafter "Assignee". However, no Assignment of a Deed of Trust to "Assignee" is recorded at
the VENTURA County Recorder's Office. Robert E. Weiss, Inc.(Law Firm), Alleged Trustee.

**ATTENTION:** To all parties Listed above.

This communication will serve as Borrower's Notice of Right to Cancel dated Nov 06, 2009 TILA
(Truth in Lending Act, 15 USC § 1601 et seq; 12 CFR Part 226) allows three (3) years to review
Disclosure Documents. The referenced "Three Day Right to Cancel" must have a trigger to begin.
That trigger is when the Lender has provided the Borrower with ALL of the required disclosures
under TILA, and that the same are true, complete, accurate, and timely provided.

Sources of Law in Truth in Lending Cases (TILA) include: TILA itself, the Federal Reserve Board's
Regulation Z codified under the Code of Federal Regulations – 12 CFR Part 226 Truth In Lending
(Regulation Z), United States Code, and case law. Except where congress has explicitly relieved
lenders of liability for noncompliance, it is a strict liability statute. (Truth-In-Lending, 5th Edition,
National Consumer Law Center, 1.4.2.3.2, page 11)

Truth In Lending Law (TILA) empowers a borrower to exercise his/her right in writing by notifying
creditors of his/her cancellation by mail to rescind the mortgage loan transactions per (Reg. Z § §
226.15(a)(2), 226.23(a)(2), Official Staff Commentary § 226.23(a)(2)-1), and 15 U.S.C. § 1635(b).

The principle of equitable tolling provides an extended right of rescission such as lack of full disclosure, and/or concealment of TILA violations. If borrower chooses to exercise said extended right of rescission, security interest and obligation to pay charges are automatically voided. Equitable tolling principles are to be read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and unambiguous language. (See Rotella v. Wood, 528 U.S. 549, 560-61, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). Since TILA does not evidence a contrary Congressional intent, its statute of limitations must be read to subject to equitable tolling, particularly since the act is to be construed liberally in favor of consumers.

Once the right to rescind is exercised, by operation of law, the security interest, promissory note or lien on the property becomes automatically void ab initio.(1 5 U.S.C. § 1635(b); 12 CFR Part 226 Truth In Lending (Reg.Z) §§ 226.15(d)(1), and 226.23(d)(1). Also noted by the Official Staff Commentary, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected." (Official Staff Commentary § § 226.1 5(d)( 1)-1, and 226.23(d)(1)-1.

Also, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative defense to this notice. Strict Construction of Regulation Z dictates that voiding security interest of the creditor be considered absolute and not subject to judicial modification. Courts do not have equitable discretion to alter substantive provisions of TILA, therefore, cases on equitable modification are irrelevant.

<u>Truth in Lending (TILA) rescission not only cancels the security interest (Deed of Trust/Mortgage Instrument) in the property of any and all creditors, but also relieves the borrower of any financial liability.</u>

Whereas the entire purported loan/mortgage process and Deed of Trust referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the Borrower has other recourse, rights, and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches, as the U.S. Supreme Court has declared: "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." United States v. Throckmorton, 98 U.S. 61.

To date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the "3 DAY RIGHT TO CANCEL" period begin. If the required Full-Disclosures have not been provided, then the period in which to cancel is extended for up to three (3) years, OR until Lender moves to foreclose. Where fraud is involved there is no statute of limitations regarding rescission rights.

"Rescission, which is an equitable remedy, is not a damage award at all, but rather contemplates undoing of transaction, where by each party gives back to the other what it parted with in original transaction." Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 190 Ariz. 6, corrected on denial of consideration, and review denied.---Can of Inst 1.

Usually, in order to exercise the right of contractual "Rescission," the consent of both parties is required, but a contract may be rescinded, without the consent of both parties, when the contract is "grounded on mutual mistake, fraud, or illegality in the formation of the contract and is available only when one or more of those circumstances is present." Dow Chemical C. v. U.S., 226 F.3d 1334, rehearing denied, on remand 57 Fed.Cl. 403 .---Can of Inst 63: Contracts 274.

"Rescission" "[R]equires surrender of any consideration or advantage secured by either party, or an offer to restore. May v. Price, 118 F.Supp. 331 F.2d 389.---Contracts 265, 266(1)

"In providing borrowers with right to rescind consumer credit transactions subject to the Truth in Lending Act (TILA), Congress was using the word "rescission" in its legal sense, not to signify an annulment definitively accomplished by unilateral pronouncement, but as being in nature of remedy restoring the status quo ante. Truth in Lending Act, § 125(a), b), 15 U.S.C.A. § 1635(a, b).---Ray v. CitiFinancial, Inc., 228 F.Supp. 2d 664.---Cons Cred 36.

The records thus far evidence that Borrower has requested to cancel within the stipulated three (3) year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal law, which documents have never been received by the Borrower.

A close perusal/audit of Borrower's mortgage documents has revealed certain Disclosure Violations; and that the Borrower has the remedial right and remedy (UCC 1-201(32)(34)), inter alia, to invoke Borrower's Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. Lender will also find Borrower's signed and dated NOTICE to the Lender(s), Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such NOTICE was not provided, this written Notice of Communication is provided in lieu thereof.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's home within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical" or "unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered.

In the event the Lender shall fail or return the Borrower's money offer within (20) days, Borrower(s) may then regain/acquire all rights to clear title and reconveyance under Federal Law and provisions of TILA.

Additionally, it is acknowledged by the Lender, that the Lender sold the "original" (not copied) promissory note, hereinafter "PN," to the Federal Reserve Bank, hereinafter "FRB," in EXCHANGE for credits to the Lender's FRB reserve account. Uniform Commercial Code (U.C.C.) 3-30 1 – Person entitled to enforce the instrument, states, "Person entitled to enforce the instrument means the holder of the instrument." Therefore, when the Lender sold the PN to the FRB the Lender was no longer a "holder" vested with the right to enforce the PN debt. U.C.C. 3-305. Defenses and claims in recoupment, states in Section (3), "[A]n obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course. . ."

When the Lender is involved in wrongdoing, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages (i.e. triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction.

Notice is hereby given the Lender to make full-restitution of all mortgage payments, interest and fees, as well as any other money/funds given to any persons or other fiction in law/entity, in connection with the above referenced transaction. Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt, date of receipt excluded, shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

Further Affiant(s) sayeth naught

Sincerely, _____
Juan Carlos Zapata

_____
Patricia Ultreras

**JURAT**

State of _California_ )
                          ss.
County of _Santa Barbara_ )

On this _06_ day of _NOV_____, 20 _09_, the Affiants) herein, appeared personally before me and acknowledged that she signed this affidavit, under penalty of perjury, of his/her own free will. WITNESS my name and seal as of this date.

_may 18 2013_
My Commission Expires
(SEAL)

_____
Notary Public

LAURA GUTIERREZ
Commission # 1860000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

Exhibit A, Page 27

WHEN RECORDED MAIL TO:

Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

_____ Above This Line for County Recorder's Use Only

November 6, 2009

### NOTICE OF RIGHT TO CANCEL
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

To:

COUNTRYWIDE HOME LOANS                    Certified Mail Number
4500 Park Granada                         7008323000016904962
Calabasas, Ca, 91302

UGIE                                      Certified Mail Number
230 N. ELM                                7008323000016904993
GREENSBORO, NORTH CAROLINA, 27401

MERS INC                                  Certified Mail Number
PO Box 2026                               70091410000221117822
Flint, MI, 48501-2026

Re:

COUNTRYWIDE HOME LOANS, Loan # 113620224; UGIC CERTIFICATE NUMBER
10487576 Parcel No. 131-0-180-055; Commonly Known Address: 1660 TAPIR CIRCLE,
VENTURA, CALIFORNIA, 93003.

Deed of Trust Record No.20060126-0016984 : Dated 01-19-2006, Recorded Date 01-26-2006

*Affidavit of Notice of Right to Cancel, Page 1 of 5*

Exhibit A, Page 28

**Legal Description:**
LOT 338 OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.,
ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE
COUNTY RECORDER, VENTURA, CALIFORNIA.

**Parties:**
Juan Carlos Zapata and Patricia Ultreras Alleged Borrower/Trustor, hereinafter "Borrower," and
COUNTRYWIDE HOME LOANS Alleged Lender, hereinafter "Lender(s)," and COUNTRYWIDE
HOME LOANS, UGIC. Alleged Assignee of Deed of Trust, hereinafter "Assignee". However, no
Assignment of a Deed of Trust to "Assignee" is recorded at the VENTURA County Recorder's
Office.

**ATTENTION:** To all parties Listed above.

This communication will serve as Borrower's Notice of Right to Cancel dated Nov 06, 2009 TILA
(Truth in Lending Act, 15 USC § 1601 et seq; 12 CFR Part 226) allows three (3) years to review
Disclosure Documents. The referenced "Three Day Right to Cancel" must have a trigger to begin.
That trigger is when the Lender has provided the Borrower with ALL of the required disclosures
under TILA, and that the same are true, complete, accurate, and timely provided.

Sources of Law in Truth in Lending Cases (TILA) include: TILA itself, the Federal Reserve Board's
Regulation Z codified under the Code of Federal Regulations – 12 CFR Part 226 Truth In Lending
(Regulation Z), United States Code, and case law. Except where congress has explicitly relieved
lenders of liability for noncompliance, it is a strict liability statute. (Truth-In-Lending, 5th Edition,
National Consumer Law Center, 1.4.2.3.2, page 11)

Truth In Lending Law (TILA) empowers a borrower to exercise his/her right in writing by notifying
creditors of his/her cancellation by mail to rescind the mortgage loan transactions per (Reg. Z § §
226.15(a)(2), 226.23(a)(2), Official Staff Commentary § 226.23(a)(2)-1), and 15 U.S.C. § 1635(b).

The principle of equitable tolling provides an extended right of rescission such as lack of full
disclosure, and/or concealment of TILA violations. If borrower chooses to exercise said extended
right of rescission, security interest and obligation to pay charges are automatically voided. Equitable
tolling principles are to be read into every federal statute of limitations unless Congress expressly
provides to the contrary in clear and unambiguous language. (See Rotella v. Wood, 528 U.S. 549,
560-61, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). Since TILA does not evidence a contrary
Congressional intent, its statute of limitations must be read to subject to equitable tolling, particularly

since the act is to be construed liberally in favor of consumers.

Once the right to rescind is exercised, by operation of law, the security interest, promissory note or lien on the property becomes automatically void ab initio.(1 5 U.S.C. § 1635(b); 12 CFR Part 226 Truth In Lending (Reg.Z) §§ 226.15(d)(1), and 226.23(d)(1). Also noted by the Official Staff Commentary, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected." (Official Staff Commentary § § 226.1 5(d)( 1)-1, and 226.23(d)(1)-1.

Also, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative defense to this notice. Strict Construction of Regulation Z dictates that voiding security interest of the creditor be considered absolute and not subject to judicial modification. Courts do not have equitable discretion to alter substantive provisions of TILA, therefore, cases on equitable modification are irrelevant.

Truth in Lending (TILA) rescission not only cancels the security interest (Deed of Trust/Mortgage Instrument) in the property of any and all creditors, but also relieves the borrower of any financial liability.

Whereas the entire purported loan/mortgage process and Deed of Trust referenced herein and throughout, was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent misrepresentation, the Borrower has other recourse, rights, and cause of action under numerous state and federal statutes. Acts of fraud taint/void everything it touches, as the U.S. Supreme Court has declared: "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." United States v. Throckmorton, 98 U.S. 61.

To date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the "3 DAY RIGHT TO CANCEL" period begin. If the required Full-Disclosures have not been provided, then the period in which to cancel is extended for up to three (3) years, OR until Lender moves to foreclose. Where fraud is involved there is no statute of limitations regarding rescission rights.

"Rescission, which is an equitable remedy, is not a damage award at all, but rather contemplates undoing of transaction, where each party gives back to the other what it parted with in original transaction." Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 190 Ariz. 6, corrected on denial of consideration, and review denied.---Can of Inst 1.

Usually, in order to exercise the right of contractual "Rescission," the consent of both parties is required, but a contract may be rescinded, without the consent of both parties, when the contract is "grounded on mutual mistake, fraud, or illegality in the formation of the contract and is available only when one or more of those circumstances is present." Dow Chemical C. v. U.S., 226 F.3d 1334, rehearing denied, on remand 57 Fed.Cl. 403 .---Can of Inst 63: Contracts 274.

Affidavit of Notice of Right to Cancel, Page 3 of 5

"Rescission" "[R]equires surrender of any consideration or advantage secured by either party, or an offer to restore. May v. Price, 118 F.Supp. 331 F.2d 389.---Contracts 265, 266(1)

"In providing borrowers with right to rescind consumer credit transactions subject to the Truth in Lending Act (TILA), Congress was using the word "rescission" in its legal sense, not to signify an annulment definitively accomplished by unilateral pronouncement, but as being in nature of remedy restoring the status quo ante. Truth in Lending Act, § 125(a), b), 15 U.S.C.A. § 1635(a, b).---Ray v. CitiFinancial, Inc., 228 F.Supp. 2d 664.---Cons Cred 36.

The records thus far evidence that Borrower has requested to cancel within the stipulated three (3) year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal law, which documents have never been received by the Borrower.

A close perusal/audit of Borrower's mortgage documents has revealed certain Disclosure Violations; and that the Borrower has the remedial right and remedy (UCC 1-201(32)(34)), inter alia, to invoke Borrower's Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. Lender will also find Borrower's signed and dated NOTICE to the Lender(s), Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such NOTICE was not provided, this written Notice of Communication is provided in lieu thereof.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's home within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be "impractical" or "unfair" for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered.

In the event the Lender shall fail or return the Borrower's money offer within (20) days, Borrower(s) may then regain/acquire all rights to clear title and reconveyance under Federal Law and provisions of TILA.

Additionally, it is acknowledged by the Lender, that the Lender sold the "original" (not copied) promissory note, hereinafter "PN," to the Federal Reserve Bank, hereinafter "FRB," in EXCHANGE for credits to the Lender's FRB reserve account. Uniform Commercial Code (U.C.C.) 3-30 1 -- Person entitled to enforce the instrument, states, "Person entitled to enforce the instrument means the holder of the instrument." Therefore, when the Lender sold the PN to the FRB the Lender was no longer a "holder" vested with the right to enforce the PN debt. U.C.C. 3-305. Defenses and claims in recoupment, states in Section (3), "[A]n obligor is not obliged to pay the instrument if the person

seeking enforcement of the instrument does not have rights of a holder in due course.. ."
When the Lender is involved in wrongdoing, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages (i.e. triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction.

Notice is hereby given the Lender to make full-restitution of all mortgage payments, interest and fees, as well as any other money/funds given to any persons or other fiction in law/entity, in connection with the above referenced transaction. Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt, date of receipt excluded, shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

Further Affiant(s) sayeth naught

Sincerely,

Juan Carlos Zapata

Patricia Ultreras

**JURAT**

State of _California_ )

_ss._

County of _Santa Barbara_ )

On this _06_ day of _NOV_ , 20 _09_ , the Affiants) herein, appeared personally before me and acknowledged that she signed this affidavit, under penalty of perjury, of his/her own free will. WITNESS my name and seal as of this date.

_May 18 2013_
My Commission Expires
(SEAL)

Notary Public

LAURA GUTIERREZ
Commission # 1860000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

Affidavit of Notice of Right to Cancel, Page 5 of 5

" EXHIBIT B"

WHEN RECORDED MAIL TO:
Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

_____

Above This Line for County Recorder's Use Only

November 6, 2009

## NOTICE OF REMOVAL

*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultreras
        1660 TAPIR CIRCLE
        VENTURA, CALIFORNIA, 93003

To:

| | |
|---|---|
| Harbourton Mortgage Investment Corporation<br>1300 North Dutton Ave. Ste A<br>Santa Rosa, Ca, 95401 | Certified Mail Number<br>70091410000221117808 |
| Aurora Loan Serivces<br>10350 Park Meadows Dr.<br>Littleton, Co., 80124 | Certified Mail Number<br>70091410000221117815 |
| MERS INC<br>PO Box 2026<br>Flint, MI, 4850 1-2026 | Certified Mail Number<br>70091410000221117822 |
| Robert E. Weiss, Inc.<br>920 Village Oaks Dr.<br>Covina, Ca, 91724 | Certified Mail Number<br>70081830000374842351 |

Re: Harbourton Mortgage Investment Corporation Loan #11504015, Parcel No. 131-0-180-055
    Commonly Known Address: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003

Deed of Trust Record No. 20050201-0024868 Book 20050201: Dated 01-21-2005, Recorded
Date 02-01-2005

To: All parties addressed above:

TRUSTOR/GRANTOR: Juan Carlos Zapata and Patricia Ultreras hereby references the Deed of
Trust drawn and executed by Juan Carlos Zapata and Patricia Ultreras, as Trustor/Grantor/Creator
regarding the following described real property situated in said county and state, to wit:

Legal Description:
LOT 338OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.,
ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE
COUNTY RECORDER, VENTURA, CALIFORNIA.

The street address or other common designation, if any, of the real property described above is
purported to be: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003

GRANTOR/TRUSTOR: Juan Carlos Zapata and Patricia Ultreras by actual and constructive notice
hereby declares that:

1.   Effective immediately, the undersigned Juan Carlos Zapata and Patricia Ultreras forever
     removes /releases / discharges all: Trustee(s), Successor Trustee(s), Substituted Harbourton
     Mortgage Investment Corporation, 1300 North Dutton Ave. Ste A, Santa Rosa, Ca, 95401,
     Aurora Loan Serivces, 10350 Park Meadows Dr., Littleton, Co., 80124, Robert E. Weiss,
     Inc.((Law Firm)), 920 Village Oats Dr., Covina, Ca, 91724, thereby removing and terminating the
     same from any/all duties and forever barring/stopping the aforesaid from any further
     appointments or assignments originally granted or contained within the Deed of Trust

2.   Effective immediately, the undersigned Juan Carlos Zapata and Patricia Ultreras forever
     Revokes / Cancels / Voids / Rescinds any/all duties, appointments, or assignments originally
     granted by Revocation of Power of Attorney and any/all authority granted or designated
     thereunder to any/all parties, known and unknown, including the alleged Lender and
     successors, known and unknown; and including but not limited to: Harbourton Mortgage
     Investment Corporation listed above; thereby removing and terminating the same from any/all
     authority to act as "TRUSTEE(S)", "SUCCESSOR TRUSTEE(S)", "SUBSTITUTES", or
     "BENFICIARY(S)".

                                  LET IT BE KNOWN

All of the above named "Trustee(s)", "Successor Trustee(s)", Beneficiary(s)", or Assigns, Substitutes,
known or unknown in clauses 1 and 2 above, are hereby directed to immediately CEASE and
DESIST any further actions through said appointments/assignments granted in or from Record No.
2005020 1-0024868 dated 02-01-2005. ANY such continued or further action by ANY of the above
named parties may result in legal actions against them.

Be it further known, GRANTOR/Trustor: Juan Carlos Zapata and Patricia Ultreras hereby declares
that: Effective immediately, all duty(s) and benefit(s) of "Trustee" and "Beneficiary" as set forth in
original Deed of Trust, are hereby reassigned by Quitclaim to Juan Carlos Zapata and Patricia
Ultreras (Trustee(s)).

## ACTUAL AND CONSTRUCTIVE NOTICE

All "Trustee(s)", "Successor Trustee(s)" and Beneficiary(s) named in Deed of Trust dated 01-21-2005 and recorded 02-01-2005 under Deed of Trust Record No.20050201-0024868 Book 20050201, Page(s) are hereby removed/released/dismissed from all duties, expressed or implied, effective immediately. The aforesaid Trustee(s), Successor Trustee(s), Substituted Trustee(s), and Beneficiary(s) are expressly directed to CEASE and DESIST any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number regarding the real property located at 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003. Any continued actions of any nature against the property described above may result in legal action being taken.

Further, the Declarant sayeth naught,

_Juan Carlos Zapata_
Juan Carlos Zapata

_Patricia Ultreras_
Patricia Ultreras

JURAT

State of _California_ )
                       ss.
County of _Santa Barbara_ )

On this _06_ day of _NOV_, 20 _09_, the above named Declarant(s), personally appeared before me, subscribed and sworn, and acknowledges that she signed this document of his/her own free will and choice. WITNESS my hand and seal.

(SEAL)

_Laura Gutierrez_
Notary Public

LAURA GUTIERREZ
Commission # 1860000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

WHEN RECORDED MAIL TO:
Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

Above This Line for County Recorder's Use Only

November 6, 2009

### NOTICE OF REMOVAL
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003
To:
COUNTRYWIDE HOME LOANS
4500 Park Granada
Calabasas, Ca, 91302

Certified Mail Number
70083230000169404962

UGIE
230 N. ELM
GREENSBORO, NORTH CAROLINA, 27401

Certified Mail Number
70083230000169404993

MERS INC
PO Box 2026
Flint, MI, 4850 1-2026

Certified Mail Number
70091410000221117822

Re: COUNTRYWIDE HOME LOANS Loan #113620224, Parcel No. 131-0-180-055 Commonly
Known Address: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003

Deed of Trust Record No. 20060126-0016984: Dated 01-19-2006 , Recorded Date 01-26-2006

To: All parties addressed above:

TRUSTOR/GRANTOR: Juan Carlos Zapata and Patricia Ultreras hereby references the Deed of
Trust drawn and executed by Juan Carlos Zapata and Patricia Ultreras, as Trustor/Grantor/Creator
regarding the following described real property situated in said county and state, to wit:

Exhibit A, Page 37

Legal Description:
LOT 338OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.,
ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE
COUNTY RECORDER, VENTURA, CALIFORNIA. ·

The street address or other common designation, if any, of the real property described above is
purported to be: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003

GRANTOR/TRUSTOR: Juan Carlos Zapata and Patricia Ultreras by actual and constructive notice
hereby declares that:

1.   Effective immediately, the undersigned Juan Carlos Zapata and Patricia Ultreras forever
     removes /releases / discharges all: Trustee(s), Successor Trustee(s), Substituted
     COUNTRYWIDE HOME LOANS, 4500 Park Granada, Calabasas, Ca, 91302, UGIE, 230 N.
     ELM, GREENSBORO, NORTH CAROLINA, 27401, thereby removing and terminating the
     same from any/all duties and forever barring/stopping the aforesaid from any further
     appointments or assignments originally granted or contained within the Deed of Trust
     described herein.

2.   Effective immediately, the undersigned Juan Carlos Zapata and Patricia Ultreras forever
     Revokes / Cancels / Voids / Rescinds any/all duties, appointments, or assignments originally
     granted by Revocation of Power of Attorney and any/all authority granted or designated
     thereunder to any/all parties, known and unknown, including the alleged Lender and
     successors, known and unknown; and including but not limited to: COUNTRYWIDE HOME
     LOANS listed above; thereby removing and terminating the same from any/all authority to act
     as "TRUSTEE(S)", "SUCCESSOR TRUSTEE(S)", "SUBSTITUTES", or
     "BENFICIARY(S)".

### LET IT BE KNOWN

All of the above named "Trustee(s)", "Successor Trustee(s)", Beneficiary(s)", or Assigns, Substitutes,
known or unknown in clauses 1 and 2 above, are hereby directed to immediately CEASE and
DESIST any further actions through said appointments/assignments granted in or from Record No.
20060126-0016984 dated 01-26-2006. ANY such continued or further action by ANY of the above
named parties may result in legal actions against them.

Be it further known, GRANTOR/Trustor: Juan Carlos Zapata and Patricia Ultreras hereby declares
that: Effective immediately, all duty(s) and benefit(s) of "Trustee" and "Beneficiary" as set forth in
original Deed of Trust, are hereby reassigned by Quitclaim to Juan Carlos Zapata and Patricia
Ultreras (Trustee(s)).

## ACTUAL AND CONSTRUCTIVE NOTICE

All "Trustee(s)", "Successor Trustee(s)" and Beneficiary(s) named in Deed of Trust dated 01-19-2006 and recorded 01-26-2006 under Deed of Trust Record No.20060126-0016984 are hereby removed/released/dismissed from all duties, expressed or implied, effective immediately. The aforesaid Trustee(s), Successor Trustee(s), Substituted Trustee(s), and Beneficiary(s) are expressly directed to CEASE and DESIST any further duties/actions of said appointment(s), or assignment(s) including debt collections and any foreclosure actions under any number regarding the real property located at 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003. Any continued actions of any nature against the property described above may result in legal action being taken.

Further, the Declarant sayeth naught,

Juan Carlos Zapata

Patricia Ultreras

**JURAT**

State of California )

County of Santa Barbara )   ss.

On this Ole day of NOV , 20 09 , the above named Declarant(s), personally appeared before me, subscribed and sworn, and acknowledges that she signed this document of his/her own free will and choice. WITNESS my hand and seal.

(SEAL)

Notary Public

LAURA GUTIERREZ
Commission # 1850000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

Exhibit A, Page 39

" EXHIBIT C"

WHEN RECORDED MAIL TO:
Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

Above This Line for County Recorder's Use Only

November 6, 2009

## NOTICE OF REVOCATION OF POWER OF ATTORNEY
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultrera
     1660 TAPIR CIRCLE
     VENTURA, CALIFORNIA, 93003

To:

Harbourton Mortgage Investment Corporation
1300 North Dutton Ave. Ste A
Santa Rosa, Ca, 95401

Certified Mail Number
70091410000221117808

Aurora Loan Scrivces
10350 Park Meadows Dr.
Littleton, Co., 80124

Certified Mail Number
70091410000221117815

MERS INC
PO Box 2026
Flint, MI, 4850 1-2026

Certified Mail Number
70091410000221117822

Robert E. Weiss, Inc.
920 Village Oaks Dr.
Covina, Ca, 91724

Certified Mail Number
70081830000374842351

Re: Harbourton Mortgage Investment Corporation on Loan #11504015, Parcel No. 131-0-180-055,
Commonly Known Address: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003
Deed of Trust Record No. 20050201-0024868 Book 20050201,: Dated 01-21-2005, Recorded
Date 02-01-2005

Juan Carlos Zapata and Patricia Ultreras DO HEREBY DECLARE:

That due to the discovery of various elements of fraud, fraudulent inducement, fraudulent
misrepresentation, entrapment, and nondisclosure, resulting in the deprivation of property by
Harbourton Mortgage Investment Corporation and Robert E. Weiss, Inc.((Law Firm)) addresses

Exhibit A, Page 41

above, and/or by any of its agents and/or assignees, et al; and after a recent review/audit and a close perusal of the purported mortgage loan, Deed of Trust, and Security Agreement records, we, Juan Carlos Zapata and Patricia Ultreras hereby refuse to knowingly accept, or otherwise participate in ANY part of the fraud and other wrongful actions involving the purported "original" Promissory Note/Security Agreement/Deed of Trust; And, further do hereby revoke, rescind, and terminate all our signatures relating to any/all said deeds, notes, and agreements from their inception.

Furthermore, we, Juan Carlos Zapata and Patricia Ultreras hereby revokes, terminates, and rescinds all Powers of Attorney, in fact or otherwise, previously signed by me, or that are implied by law, by trust or otherwise, with or without my consent and/or knowledge, as such pertains to any property, real or personal, promissory note, Deed of Trust and mortgage signed on the date of 01-21-2005 or otherwise, under Deed of Trust Record No.20050201-0024868 and Recorded 02-01-2005, involving the property specifically addressed and identified as:

LOT 338OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY., ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE COUNTY RECORDER, VENTURA, CALIFORNIA

Further, the Affiant(s) sayeth naught,

_____        _____
Juan Carlos Zapata                       Patricia Ultreras

### ACKNOWLEDGEMENT

State of California )
County of Santa Barbara )

On NOV 06 2009 before me, Laura Gutierrez (public notary) personally
(here insert name and title of the officer)
appeared Juan Carlos Zapata and Patricia Ultreras
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

LAURA GUTIERREZ
Commission # 1850000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

Exhibit A, Page 42

WHEN RECORDED MAIL TO:

Juan Carlos Zapata and Patricia Ultreras
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

_Above This Line for County Recorder's Use Only_

November 6, 2009

<u>NOTICE OF REVOCATION OF POWER OF ATTORNEY</u>
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

From: Juan Carlos Zapata and Patricia Ultrera
1660 TAPIR CIRCLE
VENTURA, CALIFORNIA, 93003

To:
COUNTRYWIDE HOME LOANS
4500 Park Granada
Calabasas, Ca, 91302

Certified Mail Number
70083230000169404962

UGIE
230 N. ELM
GREENSBORO, NORTH CAROLINA, 27401

Certified Mail Number
70083230000169404993

MERS INC
PO Box 2026
Flint, MI, 4850 1-2026

Certified Mail Number
70091410000221117822

Re: COUNTRYWIDE HOME LOANS on Loan #113620224, Parcel No. 131-0-180-055, Commonly Known Address: 1660 TAPIR CIRCLE, VENTURA, CALIFORNIA, 93003

Deed of Trust Record No. 20060126-0016984: Dated 01-19-2006; Recorded Date 01-26-2006

Juan Carlos Zapata and Patricia Ultreras DO HEREBY DECLARE:

That due to the discovery of various elements of fraud, fraudulent inducement, fraudulent misrepresentation, entrapment, and nondisclosure, resulting in the deprivation of property by COUNTRYWIDE HOME LOANS, addresses above, and/or by any of its agents and/or assignees, et al; and after a recent review/audit and a close perusal of the purported mortgage loan, Deed of Trust, and Security Agreement records, we, Juan Carlos Zapata and Patricia Ultreras hereby refuse to knowingly accept, or otherwise participate in ANY part of the fraud and other wrongful actions involving the purported "original" Promissory Note/Security Agreement/Deed of Trust; And, further do hereby revoke, rescind, and terminate all our signatures relating to any/all said deeds, notes, and agreements from their inception.

Exhibit A, Page 43

Furthermore, we, Juan Carlos Zapata and Patricia Ultreras hereby revokes, terminates, and rescinds all Powers of Attorney, in fact or otherwise, previously signed by me, or that are implied by law, by trust or otherwise, with or without my consent and/or knowledge, as such pertains to any property, real or personal, promissory note, Deed of Trust and mortgage signed on the date of 01-19-2006 or otherwise, under Deed of Trust Record No.20060126-0016984 and Recorded 0 1-26-2006, involving the property specifically addressed and identified as:

LOT 338OF TRACT 2256-3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 66, PAGES(S) 22 TO 26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY., ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE COUNTY RECORDER, VENTURA, CALIFORNIA.

Further, the Affiant(s) sayeth naught,

_____
Juan Carlos Zapata

_____
Patricia Ultreras

## ACKNOWLEDGEMENT

State of California            )

County of Santa Barbara )

On NOV 06, 2009 before me, Laura Gutierrez (Public Notary) personally

(here insert name and title of the officer)

appeared Juan Carlos Zapata and Patricia Ultreras

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

LAURA GUTIERREZ
Commission # 1660000
Notary Public · California
Santa Barbara County
My Comm. Expires May 18, 2013

1  | Juan Carlos Zapata and Patricia Ultreras
2  | c/o 1660 Tapir Circle
   | Ventura, California 93003
3  | 805-452-5736

4  |                    SUPERIOR COURT OF CALIFORNIA
   |                         COUNTY OF VENTURA
5

6  | Real Party(s) In Interest(s):
   | JUAN CARLOS ZAPATA,
7  | PATRICIA ULTRERAS et al;                        Case No.:

8  |                    Plaintiff,

9  | Vs                                              MEMORANDUM OF LAW IN SUPPORT

10 | HARBOURTON MORTGAGE INVESTMENT
   | CORPORATION; and
11 | AURORA LOAN SERIVCES; and
   | ROBERT E WEISS INCORPORATED; and            Judge:
12 | UGIE COMPANY; and
   | COUNTRYWIDE BANK, N.A.; and
13 | BANK OF AMERICA, N.A.; and
   | MERS; and
14 | ANY SUBSIDIARIES OF THE ABOVE
   | NAMED DEFENDANTS: and
15 | ANY KNOWN OR UNKNOWN JOHN DOES.

16 |                    Defendants

## MEMORANDUM OF LAW IN SUPPORT

Petitioners are not attorneys and are not schooled in law or schooled in the formalities with respect to the form of pleadings usually submitted by attorneys. The Petitioners request this Court acknowledge whether Petitioners' complaint states a cognizable claim under the standard established by the United States Supreme Court in Haines v. Kerner, 404 U.S. 519 (1972). Therein it was held that a pro se document is to be liberally construed. The Court unanimously held that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-521, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Exhibit A, Page 45

1    The first requisite element of an alleged debt is existence of obligation. In the case of *Ernst v.*
2  *Jesse L. Riddle*, P.C., M.D. La. 1997, 964 F. Supp. 213, it states, AFirst requisite element of debt under the
3  *Fair Debt Collection Practices Act* (FDCPA) is existence of the obligation.@  It is also the first principle
4  of evidencing any alleged debt. No secured party can allege a debt without first producing evidence of the
5  debt.

6                                    HOLDER IN DUE COURSE
7    The Court, in *Campaign v Barba*, 23 AD3d 327 [2d Dept 2005], held that " [t]o establish a prima
8  facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the
9  mortgage and the mortgage note, ownership of the mortgage, and the defendant's default in payment
10 [emphasis added]." (*See Mortgage Corp. v Yahhobi*, 19 AD3d 402 [2d Dept 2005]; *Ocwen Federal Bank
11 FSB v Miller*, 18 AD3d 527 [2d Dept 2005]; *U.S. Bank Trust Nat. Ass'n Buttio*, 16 AD3d 408 [2d Dept
12 2005]; *First Union Mortgage Corp. v Fern*, 298 AD2d 490 [2d Dept 2002]; *Village Bank v Wild Oaks
13 Holding, Inc.*, 196 AD2d 812 [2d Dept 1993].
14   "It is also true, in mortgage foreclosures, prove up of the claim requires presentment of the original
15 promissory note and general account and ledger statement Claim of damages, to be admissible as evidence,
16 must incorporate records such as a general ledger and accounting of an alleged unpaid promissory note, the
17 person responsible for preparing and maintaining the account general ledger must provide a complete
18 accounting which must be sworn to and dated by the person who maintained the ledger." See *Pacific
19 Concrete F.C.U. V. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v. Yonenaka* 25
20 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), *Fooks v. Norwich Housing Authority* 28 Conn. L. Rptr. 371,
21 (Conn. Super.2000), and *Town of Brookfield v. Candlewood Shores Estates, Inc.* 513 A.2d 1218, 201
22 Conn.1 (1986). See also *Solon v. Godbole*, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045
23 (3Dist. 1987).
24   "Where the complaining party cannot prove the existence of the note, then there is no note. To
25 recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the
26 party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain

                                                        Exhibit A, Page 46

1    balance is due and owing on the note." See *In Re: SMS Financial LLC. v. Abco Homes, Inc.* No.98-50117

2    February 18, 1999 (5th Circuit Court of Appeals.)

3        A party must also provide prima facie evidence that they are the holder of the original Mortgage as

4    well as the original Mortgage Note.

5        The Appellate Division, Second Department (*Kluge v Fugazy*, 145 AD2d 537, 538 [2d Dept

6    1988]), held that a "foreclosure of a mortgage may not be brought by one who has no title to it and

7    absent transfer of the debt, the assignment of the mortgage is a nullity." (emphasis added).Citing *kluge*

8    *v Fugazy*, the Court (*Katz v East-Ville Realty Co.*, 249 AD2d 243 [1st Dept 1998]), held that "[p]laintiff's

9    attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation

10   in law or fact."

11       Stated simply, the notes that underlie mortgages placed in securitization trusts must be assigned to

12   those trusts soon after the firms create them. And any transfers of these notes must also be recorded.

13       Federal Circuit Courts have ruled that the only way to prove the perfection of any security

14   is by actual possession of the security. See *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir

15   1977).

16
17   ### MERS --- DENIED STANDING IN FORECLOSURE ACTION

18       In a recent IN THE SUPREME COURT OF THE STATE OF KANSAS, *Landmark National Bank*

19   *v. Boyd A.* Kesler, *Mellennia Mortgage Corporation and Dennis Bristow and Tony Woydziak*, Case No.

20   98,489, Mortgage Electronic Registration System ("MERS") complained that they had been denied due

21   process of law by not being noticed of the courts action. The judge stated that, "MERS contention that it

22   was deprived of due process in violation of constitutional protections runs aground in the shallows of its

23   property interest. As noted in the discussion of the first issue above, MERS did not demonstrate, in fact,

24   did not attempt to demonstrate, that it possessed any tangible interest in the mortgage beyond a nominal

25   designation as the mortgagor. It lent no money and received no payments from the borrower. It suffered

26   no direct, ascertainable monetary loss as a consequence of the litigation. Having suffered no injury, it does

27   not qualify for protection under the Due Process Clause of either the United States or the Kansas

1   Constitutions." See *Mulane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L.Ed. 865, 70 S.Ct. 652

2   (1950); *Castle Rock v. Gonzales*, 545 U.S. 748, 763, 162 L.Ed. 2d 658, 125 S.Ct. 2796 (2005).   A

3   protected property right must have some ascertainable monetary value. 545 U.S. at 766. Indirect monetary

4   benefits do not establish protection under the Fourteenth Amendment. 545 U.s. at 767. An entitlement to a

5   procedure does not constitute a protected property interest. 545 U.S. at 764.

6       *In re Schwartz*, 366 B.R. 265 (Bankr. D. Mass. 2007), it was ruled that "[T]he practices of the

7   various MERS members including both [the original lender] and [the mortgage purchaser], in obscuring

8   from the public the actual ownership of a mortgage, thereby creating the opportunity for substantial abuses

9   and prejudice to mortgagors . . . , should not be permitted to insulate [the mortgage purchaser] from the

10  consequences of its actions in accepting a mortgage from [the original lender] that was already the subject

11  of litigation in which [the original lender] erroneously represented that it had authority to act as

12  mortgagee." *Johnson*, 2008 WL 4182397, at *4. The amicus argues that "[a] critical function performed

13  by MERS as the mortgagee is the receipt of service of all legal process related to the property."   The

14  amicus makes this argument despite the mortgage clause that specifically calls for notice to be given to the

15  lender, not the putative mortgagee.  In attempting to circumvent the statutory registration requirement for

16  notice, MERS creates a system in which the public has no notice of who holds the obligation of a

17  mortgage.

18      The Arkansas Supreme Court has noted: "The only recorded document provides note that [the

19  original lender] is not its principal.  Yet no other lender recorded its interest as an assignee of [the original

20  lender].  Permitting an agent such as MERS purports to be to step in and act without a recorded lender

21  directing its action would wreak havoc on notice in this state."

22

23

24                      FRAUD AND FRAUDULENT ACTS OF DEFENDANTS

25      Plaintiff alleges Fraud as follows:

26

27

1   Plaintiffs allege that both HARBOURTON MORTGAGE INVESTMENT CORPORATION, and
2   COUNTRYWIDE HOME LOANS, INC., engaged in Fraud in the Inducement regarding their respective
3   roles with the alleged primary loan and deed of trust, and the HELOC.

4   Plaintiffs allege that both AURORA LOAN SERVICES, and UGIE COMPANY. engaged in
5   Fraud in Fact regarding their respective roles  with the alleged primary loan and deed of trust and the
6   HELOC.

7   Recently, U.S. District Courts around the country, particularly the Ohio District Court and Judge
8   Boyko, have looked with jaundiced eye at assignments which are not accompanied by a "Corporate
9   Resolution" or "Power of Attorney" from one vested to pass along the authority to issue an assignment.
10   This is problematic, because if it is true, as Plaintiff believes it is, that HARBOURTON MORTGAGE
11   INVESTMENT CORPORATION and/or MERS, nominee for the Lender, sold the Defendants promissory
12   note and deed of trust, either before the mortgage contract was consummated or shortly thereafter.
13
14   Regarding the HELOC, COUNTRYWIDE HOME LOANS, INC. and/or MERS, nominee for the
15   Lender, had no authority to make the ASSIGNMENT OF MORTGAGE. Therefore any corporate
16   resolution authorizing the sale or assignment to BANK OF AMERICA, N.A. would be null and void ab
17   initio. Additionally, it would be necessary for COUNTRYWIDE HOME LOANS, INC., and/or MERS,
18   nominee for the Lender, and/or BANK OF AMERICA, N.A. to prove that COUNTRYWIDE HOME
19   LOANS, INC., and/or MERS, nominee for the Lender,  was in legal possession as a "holder" of Plaintiffs
20   "original" (NOT COPIED)  promissory note and Mortgage on the date of signing of said document, for if
21   proof of this fact is not produced, the Plaintiffs allege fraud on the part of COUNTRYWIDE HOME
22   LOANS, INC., and/or MERS, nominee for the Lender,    for making a fraudulent sale and/or assignment.
23   One cannot sell what one does not own!

24   Consequently, it appears that neither ROBERT E WEISS INCORPORATED, as Trustee on the
25   alleged primary mortgage, nor UGIE COMPANY, . as Trustee, on the alleged HELOC are not  owners or
26   holders of the Note and Mortgage, and therefore have no standing to foreclose upon the note via a non-
27   judicial foreclosure action in the State of California.

Exhibit A, Page 49

## THE UNIFORM COMMERCIAL AS SUBSTANTIVE LAW

### Holder is the Only Person Entitled to Enforce the Instrument

Under UCC Article 1, Part 1 ""**Holder**" means: (A) the person in **possession** of a negotiable instrument that is payable either to bearer or to an identified person that is the person in **possession**; or (B) the person in **possession** of a document of title if the goods are deliverable either to bearer or to the order of the person in **possession**." Neither BANK OF AMERICA, N.A. nor UGIE COMPANY. may claim to be the "holder" of the instrument if they refuse to present said instrument.

The word **"holder"** means a person who has legal possession of a negotiable instrument and is entitled to receive payment on it. The book entitled *The Law of Bank Deposits, Collections and Credit Cards*, ¶ 2.029(a) states:

> "Before a person can claim the privileged status of holder in due course of a negotiable check or draft [promissory note] he must first qualify as a holder." The term "holder" is defined in UCC§ 1-201(20) to mean "a person who is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or his order to bearer or in blank." In order to become a holder, the person must take the instrument by "negotiation," UCC § 3-301. If the instrument is payable to bearer, it is negotiated by delivery along; if it is payable to order, it is negotiated by delivery plus any necessary indorsement. UCC §3-202(1) (Rev. § 3-201(b).

UCC mandates who may enforce a debt, to wit:

### Rights Acquired by Negotiation, Transfer, and Indorsement

Bank's, in the case of a mortgage, before lending the borrower money, require that the borrower sign a promissory note, hereinafter "PN," and a security agreement, hereinafter "contract," in case of default upon the note. Credit card companies, and other bank vendors (companies that sell their contracts to a bank), usually only have the borrower sign a contract, which is then sold to the bank. The only

1   "person entitled to enforce an instrument means the HOLDER OF THE INSTRUMENT. . ." Illinois UCC

2   3-301. The important question to ask, therefore, is: Who is the "holder" of the PN or Contract?

3         Every time there is a change in "possession" of the PN or Contract, there has to be a "negotiation"

4   and "transfer" as defined in  UCC 3-201 and  UCC 3-203:

5

6   UCC 3-201. Negotiation.

7       (1) "Negotiation: means transfer of possession, whether voluntarily or involuntarily, of an

8         instrument other than the issuer to a person who thereby becomes its holder."

9       (2) Except for negotiation by a remitter, if an instrument is payable to an identified person,

10        negotiation requires transfer of possession of the instrument and its indorsement by the

11        holder." (underline, emphasis added)

12

13  UCC 3-203. Transfer of instrument --- Rights acquired by transfer.

14      (1) An instrument is transferred when it is delivered by a person other than its issuer for the

15        purpose of giving to the person receiving delivery the RIGHT TO ENFORCE THE

16        INSTRUMENT . . ."

17      (2) Transfer of an instrument, whether or not the transfer is a negotiation VESTS IN THE

18        TRANSFEREE ANY RIGHT OF THE TRANSFEROR TO ENFORCE THE INSTRUMENT

19        . . . Negotiation of the instrument does not occur until the indorsement is made." (underline,

20        emphasis added)

21

22  UCC 3-301. Person entitled to enforce instrument.

23      "Person entitled to enforce an instrument means the HOLDER OF THE INSTRUMENT . . ."

24  UCC 3-305. Defenses and claims in recoupment.

25      (3) ". . . [A]n obligor [borrower] is not obligated to pay the instrument if the person seeking

26        enforcement DOES NOT HAVE THE RIGHTS OF A HOLDER IN DUE COURSE. . ."

27        (underline, emphasis added)

28                              Exhibit A, Page 51

Defendants are not the real partys in interest and are not shown to be the authorized to bring this action. *In re: Shelter Development Group, Inc.,* 50 B.R. 588 (Bankr.S.D.Fla. 1985)[It is axiomatic that a suit cannot be prosecuted to foreclose a mortgage which secures the payment of a promissory note, unless the Plaintiff actually holds the original note, citing *Downing v. First Notional Bank of Lake City,* 814 So.2d 486 (Fla. 1955)]; *Your Construction Center, Inc., v. Gross,* 316 So.2d 596 (Fla.4th DCA 1975),

**Defendants have yet to produce the original promissory note and therefore cannot be the holder in due course, and hence lacks any rights to enforce the instrument, i.e., proceed with foreclosure in this instant matter.**

### THE REAL PARTY IN INTEREST REQUIREMENT

The real party in interest requirement is imposed by Fed. R. Civ. P. 17(a)(1), which states that "Every action shall be prosecuted in the name of the real party in interest."

Under Ninth Circuit law, the real party in interest is the party with the right to sue or enforce a claim under the applicable substantive law. *See, e.g., U-Haul Int'l Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1038 (9th Cir. 1986); *Allstate Ins. Co. v. Hughes,* 358 F.3d 1089, 1094 (9th Cir. 2004); *American Triticale, Inc. v. Nytco Services, Inc.,* 664 F.2d 1136, 1141 (9th Cir. 1981).

The term "real party in interest" is easy to confuse with the term "party in interest." "Party in interest" is a very broad concept. It includes the debtor, creditors, employees, officers of a corporation, professionals active in the case, and many others. In general, a party in interest, is anyone who is entitled to express a view with respect to a matter before the court.

In contrast, a "real party in interest" is a far narrower group, and is usually limited to a single party. The real party in interest is "the person who, according to the governing substantive law, is entitled to enforce the right."

It is also important to distinguish the "real party in interest" requirement from standing. Standing is a constitutional requirement, grounded in Article III. "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies'." *In re Valley Forge Christian*

1   *Coll. V. Ams. United for Separation of Church and State*, 454 U.S. 464, 484, (1982); see also *Morrow v.*

2   *Microsoft Corp.*, 499 F.3d 1332, 1339 (9th Cir. 2007).  This constitutional restriction is enforced by the

3   minimum requirement that a "party who invokes the court's authority. . .show that he suffered some actual

4   or threatened injury." *Matter of Village Rathskeller, Inc.*, 147 B.R. at 668 (citing *Valley Forge*, 454 U.S. at

5   464), that the injury be "fairly traceable to the defendant's allegedly unlawful conduct and likely to be

6   redressed by the requested relief." *See* Morrow, 499 F.3d at 1339 (citing *Hein v. Freedom Religion*

7   *Found., Inc.*,---U.S. ---, 127 S.Ct. 2553, 2555-56, 168 L.Ed.2d 424 (2007)).

8       The "real party in interest" requirement, on the other hand, is generally regarded as one of many

9   "prudential" considerations that have been "judicially engrafted onto the Article III requirements for

10  standing." *See, e.g., In re Village Rathskeller*, 147 B.R. 665, at 668(Bankr. S.D.N.Y. 1992).

11

12

13                    **THE RIGHT TO ENFORCE A NOTE AND MORTGAGE**

14       Since the "real party in interest" is that party with the right to enforce a claim under the applicable

15  substantive law, it is to that law that we must now turn.

16

17                        **WHO MAY ENFORCE THE NOTE**

18       The court assumes without deciding that the note here at issue is a negotiable instrument, as

19  defined in the Uniform Commercial Code and codified in the California Statutes, hereinafter "UCC," § 3-

20  104(a), (b), and (c).  It is on a standard printed form that is used in the finance industry for notes that are

21  freely bought and sold in a manner inconsistent with treating it as a non-negotiable note. In California, the

22  substantive law that governs negotiable instruments, such as promissory notes, has been codified in the

23  statures under Commercial Law and is in accord with the UCC Article 3§ 102(1).

24       It is important to distinguish between the "holder" or a note and the possessor of a note.  A note

25  may be in the possession of an agent, who has possession on behalf of a principal. For example, where an

26  officer of a bank is in possession of a note on behalf of the bank, the bank is the holder of the note

27  notwithstanding the possession by the officer.                    Exhibit A, Page 53

In this case, ROBERT E WEISS INCORPORATED is initiating a foreclosure action in California which is a non-judicial foreclosure state. However, ROBERT E WEISS INCORPORATED has failed to provide any prima facie evidence that demonstrating that they are in possession of the note via an "Assignment of Mortgage," or a Power of Attorney representing the interests of the real party in interest. nonetheless, It appears that MERS sold the note to Certificate Holders which note and mortgage have been bundled with thousands of other mortgages and securitized, and sold to sophisticated investors, which investors are now the "holders" as "Cerfificate Holders" of the note and mortgage in this instant case. Consequently ROBERT E WEISS INCORPORATED would have fulfilled its purpose as Trustee and therefore have no authority to foreclose. The same applies to UGIE COMPANY. on the HELOC.

The only person entitled to enforce a note (with minor exceptions not relevant to this case) is the "holder" of the note. *See* UCC 3-301. Thus, the real party in interest rule requires the holder of the note to file an action to foreclose the note for unlawful detainer and/or to file a motion for relief from stay.

Transfer of the note bears with it the right to enforce the note. *See* UCC 3-203. Indeed, unlike the ownership of contractual obligations --- which can generally be transferred by an assignment --the right of enforcement for a negotiable instrument is only transferable by delivery of the instrument itself. *See* UCC 3-203(1), which states: **"An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."** This follows from the principle that only the holder of a note is entitled to enforce the note.

### THE MORTGAGE FOLLOWS THE NOTE

In the real estate context, it is typical for a promissory note to be secured by a mortgage on real property. The security is carried by a separate instrument --- either a mortgage, or as in California and some other states, a deed of trust --- which must be recorded in the county records.

The note represents the borrower's obligation on the debt, while the mortgage or deed of trust represents the security. The latter offers its bearer legal remedies in the event of default, while the former offers equitable remedies against the property. The two together may be referred to as a "mortgage loan."

1    In the primary mortgage market, a lender originates a loan to a borrower, who in turn issues the

2    lender a note and deed of trust. This is the scenario in which the governing law developed, but it has

3    become increasingly rare. More often now, the primary mortgage market gives way almost immediately to

4    what is commonly termed the secondary mortgage market, in which the lender --- having completed the

5    primary transaction --- immediately sells the loan to an investor. (Even more complex and sophisticated

6    arrangements involve the pooling of loans into portfolios which are then securitized to form *Mortgage*

7    *Backed Securities* --- an alchemy that is little understood by the general public, much less the wizards who

8    practice it these days, and which need not concern us here.)

9    Notes traded on the secondary mortgage market remain secured because the mortgage follows the

10   Note. ("The assignment of the debt secured by mortgage carries with it the security"). California codified

11   this principle in 1872, and this has long been the law in all the United States, too; when a note secured by

12   a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment

13   or delivery, or even mention of the latter; *Carpenter v. Longan*, 83 U.S. 271, 275 (1872).

14   This is an equitable principle, in that "if [the security is] not assignable at law, it is clearly so in

15   equity." *Id.* Clearly, the objective of this principle is "to keep the obligation and the mortgage in the same

16   hands unless the parties wish to separate them." *Restatement (Third) of Property (Mortgages)*, § 5.4

17   (1997).

18   The principle is justified, in turn, by reasoning that "the debt is the principle thing and the

19   mortgage is an accessory." *Id.* Consequently, "[e]quity puts the principal and accessory upon a footing of

20   equality, and gives to the assignee of the evidence of the debt the same rights in regard to both." *Id.*

21

22

23   ## THE MORTGAGE CANNOT BE SEPARATED FROM THE NOTE

24   Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court

25   reasoned long ago that as a corollary, "the mortgage can have no separate existence." *Carpenter*, 83 U.S.

26   at 274. Hence the legal maxim cited by the Court: *accessorium non ducit, sequitur principalem*, the

27   accessory does not lead, but rather follows the principal (*Id.* at 276). In arriving at this conclusion, the

Court observed that "there is considerable discrepancy in the authorities," and cited from among these ---
one holding of the Supreme Court of Ohio--- "a case marked by great ability and fullness of research" ---
in which the Ohio Court held that while notes are made negotiable by statute, there is no such statutory
provision as to mortgages, and that hence the assignee takes the latter as he would any other chose in
action, subject to all the equities which subsisted against it while in the hands of the original holder." *Id.* at
275, citing *Baily v. Smith et al.*, 14 Ohio State 396 (1863).

A *chose in action* at first glance, does indeed appear similar to a mortgage, insofar as it is a "right
to recover. . .personal property by a judicial proceeding," and insofar as it is transferable like personal
property. "The right to take possession of personal property is a thing in action." *U.S. v. Stonehill*, 83 F.3d
1156 (9th Cir. 1996), (chose in action is transferable personal property). The Supreme Court however,
disagreed, holding that "[t]here is no analogy between this case and one where a chose in action standing
alone is sought to be enforced." *Carpenter*, 83 U.S. at 275. The "controlling consideration" that led the
Court to this conclusion was its observation of the "dependent and incidental relation" that a mortgage has
with the obligation it secures, when it stated: "[W]hen a note is paid the mortgage expires. It cannot
survive for a moment the debt which the note represents." *Carpenter*, 83 U.S. at 275. Consequently, a
mortgage is unlike any other right to take possession of property that, like a *chose in action* can stand
alone, and "where no such relation of dependence exists." *Id.* at 276. For this reason, "[A]n assignment
of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Id.* at
274. While the note is "essential," the mortgage is only "an incident to the note." *Id.*


## ONLY THE HOLDER OF THE NOTE MAY ENFORCE THE MORTGAGE

It follows further from this that "a mortgage may be enforced only by, or in behalf of, a person
who is entitled to enforce the obligation that the mortgage secures." *Restatement (Third) of Property
(Mortgages)*, § 5.4, citing *Carpenter v. Longan*. The Restatement supports this rule by analogy to the
UCC's definition of a security interest as an "interest in personal property or fixtures which secures
payment or performance of an obligation."

Exhibit A, Page 56

As the Restatement notes, "[c]ase law construing the Code holds that a security interest is unenforceable in the absence of its underlying obligation." *Id.*, citing *Bank of Lexington v. Jack Adams Aircraft Sales*, 570 F.2d 1220 (5th Cir. 1978); *In re G.O. Harris Financial Corp.*, 51 B.R. 100 (Bankr. S.D.Fla. 1985) "in order for a creditor to have lien rights in the property of a debtor, the creditor must hold an enforceable obligation against the debtor"); *see also In re Belize Airways Ltd.*, 7 B.R. 604 (Bankr S.D.Fla. 1980) ("[t]o allow the assignee of a security interest [who did not also acquire the note to enforce the security settlement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor).

## ONLY THE HOLDER OF THE NOTE IS THE "REAL PARTY IN INTEREST"

The right to enforce the mortgage on behalf of the noteholder does not, however, render the noteholder's agent into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bring suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." *Wright & Miller*, 6A Federal Practice & Procedure Civ. 2d § 1553. Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the noteholder, who is the real party in interest. Fed. R. Civ. P. 17(a)(1).

**Loan servicers may not seek relief from stay in their own name**, if the relief sought is based on a promissory note, and if that note is held by another. Rather, only the holder of the note is the real party in interest. The loan service may still be a "party in interest" under § 362(d) of the Bankruptcy Code. There may be other parties, too --- apart from the interest when a homeowner defaults on a note's obligations and files for bankruptcy. Without ownership of the note, however, none of these parties possess the right to enforce either the note or the mortgage under the applicable substantive law, whether in bankruptcy or not. Only the holder of the note possesses this right, and qualifies, therefore, as the real party in interest.

1    While some courts have held that a loan servicer is a real party in interest, none of these courts

2    have based their holdings on an analysis of the law governing promissory note. In _Greer v. O'Dell_, (In re

3    O'Dell), for example, the Eleventh Circuit held that even prior to actual transfer, the purchaser of consumer

4    credit card debt was a "real party in interest" for the purpose of filing a proof of claim pursuant to its

5    Interim Servicing Agreement with the transferor. See _O'Dell_, 305 F.3d 1297, 1302-03 (11th Cir. 2002).

6    Since the interim agreement delegated to the purchaser the responsibility for administering the

7    accounts, the court held that the purchaser was the party entitled to enforce the right to payment, even

8    though the purchaser did not yet possess the claim itself. _Id._ The credit card debt in this case, however,

9    was not governed by the same law that governs promissory notes. It is for this reason that the court did not

10   discuss the right to enforcement under UCC § 3-301, as would have been necessary in order to determine

11   who the real party in interest is in a motion for relief from stay based on a promissory note. The _O'Dell_

12   court's analysis, therefore, is distinguishable from the context of this case, because the substantive law that

13   would determine the real party in interest is entirely different.

14   Any court, by failing to consider UCC Article 3 at all, ignores the substantive law that applies to

15   promissory notes, which states that "[u]nder Pennsylvania law, a real party in interest must be in such

16   command of the action as to be legally entitled to give a complete acquittal or discharge to the other party

17   upon performance." _id._

18   Moreover, the court's only rationale for holding that the servicer is a real party is the servicer's

19   "capacity as representative for collection purposes," _id._ But most courts acknowledge, as already noted,

20   this agency argument --- fails as a matter of law. See _Wright & Miller,_ § 1553.

21

22

### RIGHT OF RESCISSION UNDER THE TRUTH IN LENDING ACT (TILA)

23   Plaintiff (Borrower) IS entitled to a right of rescission for the material nondisclosures under 15

24   U.S.C. Sec. 1635 and 12 C.F.R. Sec. 226.23. In addition, costs and attorney's fees are to be awarded

25   under 15 U.S.C. 1640(2)(B)(3).

26

27

Exhibit A, Page 58

1    Should there be violations of **15 U.S.C. Sec. 1638(a)(4)**, each count would also support an award

2    of statutory damages as set for in **15 U.S.C. Sec. 1640(2)**, however, only one award of statutory damages

3    can be made in this action.  The Maximum total class award for damages is $500,000.00 as stated above,

4    plus attorneys fees and costs.

5    The Plaintiff (Borrower) is also entitled to a right of rescission on each of these material

6    nondisclosures under **15 U.S.C. Sec. 1635 and 12 C.F.R. Sec. 226.23,** and has exercised said rights.  In

7    addition, costs and attorneys' fees are to be awarded under **15 U.S.C. 1640(2)(B)(3).**

8

9                    THE EXTENDED RIGHT TO RESCIND UNDER TILA

10   In a loan subject to rescission, the period within which a consumer may exercise the right to

11   rescind runs for three business days from the last of three events: (1) of consummation of the credit

12   transaction; (2) delivery of all material disclosures; (3) delivery to the consumer of the required rescission

13   notice.  See **15 U.S.C. § 1635(a) and Reg. Z § 226.23(b),** which affords a consumer an unequivocal

14   extended right to rescind the subject transaction for up to three years from the consummation date which

15   expires at midnight, three years from the date the contract was signed. See _Wells Fargo Credit Corp.,_ 713

16   F.Supp. 354 (D. Ariz. 1989) (when creditor sent out corrected material disclosures, it should have sent new

17   rescission notice showing that expiration date was three days from delivery of corrected disclosures). See

18   **15 U.S.C. 1635(b), Reg. Z § 226.23(d)(2); Official Staff Commentary 226.23(d)(1)01.**

19   Failure to deliver accurate material disclosures or to provide proper notice of the consumer's right

20   to cancel the transaction suspends the triggering mechanism so that the three-day right never commences.

21   Common violations occur when, for example, the creditor makes a significant mathematical error in

22   calculating the "material disclosures" contained in the federal Truth in Lending Disclosure Statement; fails

23   to notice the consumer of the sale of the promissory note and deed of trust to an MBS Trust; and fails to

24   state the proper expiration date on the rescission notice; or fails to provide a Truth in Lending Statement or

25   the requisite number of rescission notices in a form that the consumer can take from the closing.  In such

26   circumstances, the time bell is never sounded and the consumer's right of rescission will not expire until

27

28                                           Exhibit A, Page 59

1   three business days after the correct disclosure is finally delivered; or until the earlier of three years after

2   consummation, or the transfer of all the consumer's interest in the property.

3

4   ## THE OPPORTUNITY FOR RESCISSION IS AN APPROPRIATE REMEDY

5   There are a few cases that hold that TILA claims  seeking a declaration of the right to rescind

6   under §1635(b) are inappropriate for class resolution. See e.g., _James v. Home Const. Co. of Mobile, Inc._,

7   621 F.2d 727, 730-31 (5th Cir. 1980) (agreeing with district Court in TILA case that rescission was a

8   "purely personal remedy" and inappropriate for class action); _Gibbons v. Interbank Funding Group_, 208

9   F.R.D. 278, 285 (N.D. Cal. 2002) and _Jefferson v. Security Pac. Fin. Servs., Inc._, 161 F.R.D. 63, 68

10  (N.D.Ill. 1995).  None of those cases involve the numerous TILDS errors and deceptiveness employed by

11  mortgage companies and banks in their documents, often such documents are artfully tricky and indicate a

12  pattern of predatory behavior.

13  There are many cases holding that class resolution is appropriate for claims seeking a declaration

14  of the right to rescind under TILA.  See _McIntosh v. Irwin Union Bank & Trust, Co._, 215 F.R.D. 26, 32-

15  33 (1). Mass. 2003) (Young, C.J.) (discussing split among Courts regarding propriety of class resolution

16  for TILA rescission claims and holding class action appropriate); _Williams v. Empire Funding Corp._, 183

17

18  F.R.D. 428, 435-36 (F.D. Pa: 1998).

19  There is nothing in the language of TILA which precludes the use of the class action mechanism

20  provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all

21  members of the class, entitles each member of the class individually to see rescission." _Williams v._

22  _Empire Funding Corp._, 183 F.R.D. 428, 435-36 (F.E. Pa. 1998).

23  In _McIntosh v. Irwin Union Bank & Trust Co._, 215 F.R.D. 26, 32-33 (1) (Mass. 2003), the court

24  held that TILA is penal in nature and builds in incentives for litigation to protect classes of plaintiffs who,

25  individually injured, would never sue to recover modest damages.

26  In _Jefferson v. Security Pac. Fin. Servs., Inc._, 161 F.R.D. 63 (N.D. Ill. 1995), Judge Castillo

27  denied a motion for class certification because he found that "rescission is a purely personal remedy for

technical violations of TILA." Id. at 68. Particularly relevant to his conclusion was the language in section 1635(b) itself, which gives a creditor twenty days to act on a borrower's request for rescission before the claim can be filed in Court. He said, "This requirement cuts strongly in favor of treating rescission as a personal, rather than a class, remedy. Under Section 1635, individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit." Id. at 69. In concluding as he did, Judge Castillo relied in part on the decision in *James v. Home Constr. Co.*, 621 F.2d 727 (5th Cir. 1980), in which the Court found the twenty-day cure period persuasive evidence that rescission is a personal remedy and that a rescission class cannot be certified. See *James*, 621 F.2d at 731.

## COURTS HAVE HELD THAT RESCISSION REQUIRES WRITTEN NOTICE TO CREDITOR COURT JUDGMENT IS NOT REQUIRED

Courts across the country have held that any written rescission notice, including a complaint, complies with the statute on notice of rescission. See *Taylor Domestic Remodeling, Inc.*, 97 F.3d 96, 100 (5th Cir. 1996 ("[T]he filing of the complaint constitutes statutory notice of rescission pursuant to 12 C.F.R. Sec. 226.23(a)(3)."); *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp.2d 910, 913-14 (N.D. Ill. 2002) ("Defendants allege that they have made a demand for rescission . . . and even if they had not done so, their filing of an affirmative defense and counterclaim seeking rescission would be sufficient to constitute a demand for rescission under the TILA."); *McIntosh V. Irwin Union Bank and Trust, Co.*, 215 F.R.D. 26 (D. Mass. 2003). Filing a complaint against the Mortgagor serves as proper notice of rescission of a TILA/HOEPA mortgage, if timely filed, and if it specifically addresses rescission. *Eveland v. Star Bank, N.A.*, 976 F.Supp. 721 726 (S.D.Ohio 1997) (citing *Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 100 (5th Cir. 1996). See *Elliott v. ITT Corp.*, 764 F.Supp. 102, 105-6 (N.D. Ill. 1991). *In re Rodrigues*, 278 B.R. 683 (R.I. 2002), the Rodrigueses filed a complaint against U.S. Bank within three years from the date of the mortgage, and stated they were "exercising their right of rescission pursuant to 15 U.S.C. Sec. 1639 and Regulation Z Sec. 226.23(a)(3). The filing of the complaint was timely, and effectively notified U.S. Bank that the Debtors were exercising their right of Rescission. Pursuant to

1    Regulation Z, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by

2    mail, telegram or other means of written communication." 12 C.F.R. Sec. 226.23(a)(2).

3        In this case Defendants  AURORA LOAN SERVICES; ROBERT E WEISS INCORPORATED;

4    UGIE COMPANY.;  COUNTRYWIDE HOME LOANS, INC;  and MERS;  knew that the Plaintiff was

5    seeking rescission when Defendants received a written NOTICE OF RIGHT TO CANCEL by USPS

6    Certified Mail. To date no response has ever been received within the statutory twenty-day time for

7    response. Consequently, they are estopped by their "silence" and by "standing by" and may not contest the

8    already rescinded contract.  Upon the rescission of a contract, each party reverts to its pre-contractual state,

9    and each must return to the other what had been exchanged between them. Defendants were noticed that in

10   should Defendants fail to reimburse the Plaintiffs for their promissory note, monthly payments, interest,

11   fees, escrow accounts, et al. **in lieu thereof** the Plaintiffs would retain possession of the property until such

12   time as Defendants had repaid the Plaintiffs for all the costs expended in such transaction.  To date

13   Defendants have failed to reimburse the Plaintiffs as required under a rescission of contract. By law, it

14   appears, that the rescission is valid by written communication of a personal nature and there was no

15   necessity for Plaintiffs to notice the defendants a second time by filing a complaint in Superior Court of

16   California.

17

18   .

19        Two reported cases say that debtors must first request rescission of the TILA/HOEPA loan before

20   there is standing to bring a complaint against the creditor. See *Jefferson v. Security Pacific Fin. Servs.*,

21   162 F.R.D. 123, 126 (N.D.Ill. 1995); *James v. Home Construction Co.*, 621 F.2d 71980). These cases are

22   the contrary to the rule under **15 U.S.C. Sec.1635(b); TILA** merely requires written notice.

23        Defendant should know that any misleading and inadequate disclosures of the interest rate and the

24   payment schedule, failure to disclose a sale to an MBS Trust and that the mortgage is paid off, et. al.

25   extend rescission period. When misleading or inadequate disclosures of the "annual percentage rate" or the

26   "payment schedule" are given, the three day rescission period is tolled.  When the disclosures are

27   inadequate, the rescission period extends to three years from the date of the loan closing.  15 U.S.C.

1  CV-0432 (N.D. H. 2006); 2006 U.S. Dist. LEXIS 3788. Plaintiffs should be permitted to rescind their

2  loan on the basis of Defendants's grossly inadequate disclosures.

3

4                                          ULTRA VIRES

5

6      As to the authority of a bank to lend credit as opposed to money, the Supreme Court

7  of Virginia stated "[a] bank may not lend its credit to another, even though such transaction turns out

8  to have been of benefit to the bank, and in support of this a list of cases might be cited, which would

9  look like a catalog of ships." *Norton Grocery Co. v Peoples National Bank*, 144 SE 505, 151 VA

10  195. It is the general rule that a banking corporation cannot lend its credit to another by becoming

11  surety, indorser, of guarantor for him. A bank cannot, for the accommodation for another, indorse his

12  note or guarantee the performance of obligations in which it has no interest. Such an act is a venture

13  beyond the confines of the banking business.; and, when its true character is known, no rights grow

14  out of it, although it has taken on in part the garb of a lawful transaction[1] No statute empowers banks

15  to guarantee payment of a debt of a third party solely for his benefit, and any such agreement when

16  attempted by them is ultra vires and void. *Cottondale State Bank v. Oskamp Nolting Co.*, 64 Fla 36,

17  59 So 566. In support, United States Code, Title 12, Section 24, Paragraph 7 confers upon a bank the

18  power to lend its money, not its credit. In First National Bank of Tallapoosa v. Monroe, 135 Ga 614;

19  69 S.E. 1123 (1911), the court, after citing the statute heretofore quoted, said, .. [T]he provisions

20  referred to do not give power to a national bank to guarantee the payment of the obligations of others

21  solely for their benefit, nor is such power incidental of the business of banking. A bank can lend its

22  money not its credit." By the doctrine of ultra vires, a contract made by a corporation beyond the

23

24  [1] *Merchants' Bank v. Baird* (CCA8th) 160 F. 642.; *Citizens Bank v. Clements*, 172 Ark 1023, 291 SW 439, later app
25  177 Ark 1085 , 9 SW2d 569; *McFerson v. Kepner*, 76 Colo 523, 233 P. 148 (trust company; recognizing feneral rule);
    *Missouri state L. Ins.Co. v Lakeland Star Telegram Co.*, 111 Fla 416, 149 So 597, 91 ALR 173 (recognizing rule as to
26  state bank); *Ingersoll v. Kansas State Bank*, 109 Kan 534, 110 Kan 122, 202 P 837, 839; *McCornick & Co. v. Citizen
    Bank*, 304 Mo 270, 263 SW 152; *Bridge v. Welda State Bank*, 222 Mo App 586, 292, SW 1079; *Gause v
    Commonwealth Trust Co.*, 196 NY 134, 89 NE 476; *People's Nat. Bank v. Southern States Finance Co.*, 192 NC 69,
27  133 SE 415, 48 ALR 519; *Sears R. & Co. v. Rouse Bkg. Co.*, 191 NC 500, 132 SE 468; *International Harvester Co. v.
    State Bank*, 38 ND 632, 166 NW 507; *Creditors Claim & Adjustment Co. V. Northwa...*

Exhibit A - Page 83

1    scope of its corporate powers is unlawful. *Community Federal Sav. & Loan Ass'n of Independence,*

2    *Mo. v. Fields*, C.C.A.Mo., 128 F2d 705, 708. "Black's 6[th] Ed p.1522.

3       Banks extend credit, not money. See: *National Bank v. Atkinson*, 55 Fed. Rep. 571. Plaintiff was

4    initially mistakenly led to believe that CONTRYWIDE HOME LOANS, INC., would be loaning money

5    which it received from depositors and/or investors. Checks, drafts, money orders, and bank notes are not

6    lawful money of the U.S.. See: *State v. Nealan*, 43 Ore 158. Lawful money under the Constitution Article

7    1, Section 10, Paragraph 1, is "Gold and Silver." This provision of the constitution has never been

8    amended. Thus, any other form of promised money is a fraud.  From investigating "Modern Money

9    Mechanics," which is published by the Federal Reserve Bank in Chicago, it has been learned that a lending

10    institution, e.g. CONTRYWIDE HOME LOANS, INC. created the money loaned by using the Plaintiff's

11    promise to pay to generate computer entries on-my account. In effect, the bank created money out of thin

12    air (credit) and assigned the liability for it to the Plaintiff. In all of the Plaintiff's transactions with

13    CONTRYWIDE HOME LOANS, INC., MERS and subsequent assignee BANK OF AMERICA, N.A.,

14    there was no notification that CONTRYWIDE HOME LOANS, INC. created this money and "obligation"

15    out of thin air. Such transaction with the Plaintiff lacks two of the necessary elements of a contract.

16

17       I. No "meeting of the minds" (Full Disclosure)
       2. No "consideration *of* Value."

18

19 A lawful consideration must exist and be tendered to support the note." See *Anheuser Busch Brewing Co. v*

20 *Emma Mason*, 44 Minn. 318,46 NW 558 (1890). A bill of credit is not a good consideration for a contract.

21 See: *Craig v. Missouri*, 4 Pet 431; *Bank v. Clark*, 4 Mo 59; *Linn v. Bank*, 5 Ill 87. In short, if there is no

22 Full Disclosure and no consideration, there is no contract. It is a well-established principle of law that fraud

23 has no statute of limitations and that its presence cancels any agreement. When a contract is once declared

24 ultra vires, the fact that it is executed does not validate it, nor can it be ratified, so as to make it the basis of

25 suitor action, nor does the doctrine of estoppel apply." <u>Fand PR v. Richmond</u>, 133 SE 898; 151 Va 195.

26

27              **TRIAL BY JURY**

Exhibit A, Page 64

1   Plaintiffs demand a trial-by-jury of all issues of fact so triable, and all mixed questions of law and

2   fact which may be triable as a matter of controlling case law, and Plaintiffs demand an advisory jury on all

3   other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from

4   the deciding issues presented to the jury for resolution.

5

6                                       **PRAYER FOR RELIEF**

7

8   Plaintiff, Juan Carlos Zapata, prays for judgment against all defendants for the relief requested

9   above, including but not limited to declaratory judgment regarding the rights and status of each party in

10  relation to the property at 1027 Corte Primavera, Oxnard, California 93030, and the interests assigned to

11  Plaintiff in such property and the notes, transactions, and occurrences relating to the same.  Plaintiff also

12  seeks statutory damages, attorney's fees, and any other equitable relief including monetary damages. When

13  the Lender is involved in wrongdoing, the penalty that a bank can face for violations of TILA and other

14  State and Federal law can be as much as triple damages calculated from the mortgage/loan transaction.

15  Plaintiff therefore requests the same and/or as the court so adjudicates.

16  Respectfully submitted, this ____17____ December, 2009

17

18  By: _____

         Juan Carlos Zapata

19

20  By: _____

         Patricia Ultreras

21

22

23

24

25

26

27

**EXHIBIT A**
**AFFIDAVIT**

Of: Juan Carlos Zapata and Patricia Ultreras
Re: Promissory Note No: 11504015
On Security Instrument dated: 1/21/2005
Mortgage No: 2005020 1-0024868

State of California _____ )
                                              ss.
County of Santa Barbara )

"Indeed, no more than [such affidavits are] necessary to make the prima face case." United States v Kis, 658 F.2nd 526, 536 (7th Cir. 1981) Cert Denied, 50 U.S. L.W. 2169; S. Ct March 22nd 1982.

Comes now Juan Carlos Zapata and Patricia Ultreras (hereafter "affiants'") sentient living human being(s), being first duly sworn/affirmed and do depose, say, declare, and affirm by affiant's signature that we are over the age of 18 years and have first hand personal knowledge of the following statements and affirm the same are true and correct to the best of our knowledge and belief, to wit:

1. Affiants' were induced to believe by certain officers/ employees of Harbourton Mortgage Investment Corporation and its successor/assign, Aurora Loan Serivces (hereinafter, Lender) and further by the Lender's adverting that said Lender had money of its own to loan to affiant(s) and to others

2. Affiants' accepted the Lender's offer to loan affiant the Lender's money, and affiant(s) did sign a Promissory Note/Mortgage/Security Instrument (Mortgage) dated January 21, 2005.

3. The Lender did also induce affiants' to sign a "security agreement/instrument" dated January 21, 2005, granting the Lender a secured interest and lien in/on certain of the affiant's property currently held/owned or otherwise acquired. The Lender caused affiants' to believe this "security agreement/instrument" was necessary for the Lender to protect and insure its valuable and lawful "consideration", i.e. the loaning of the Lender's money to affiants' as advertised and promised.

4. The Lender did further induce affiants' into signing a Security Instrument (Mortgage) which the Lender and/or its cohorts created, dated January 21, 2005, wherein the Lender did cause other undeserving third parties to obtain a lien against, a security interest in, and complete control over the affiant's personal property. Again the Lender led affiants' to believe this Security Instrument (Mortgage)/Assignment was necessary to further secure the Lender's valuable lawful consideration against any potential "risk of loss" associated with the lending of the Lender's money to the affiants'.

5. Prior to the affiants' signing any of the Lender's required financial documents, and forever thereafter, none of the banks officers/employees have ever fully described and categorized all of the underlying, undisclosed particulars, details and principals of law regarding the banks entire purported "loan" process, including but not limited to the source of the money used to fund the Deed of Trust, or how said money was obtained or created, and by whom.

Exhibit A, Page 66

6. No time prior to signing of any "loan" documents and to this date did Lender, nor any of its officers/employees, assigns, et al ever disclose to the affiants' the material fact that the funding of the Note/Deed of Trust was being created/obtained by and through affiant's on the Note, which is the same Note the Lender appears to have later arbitrarily and deceitfully claimed as its own, endorsed without recourse, and then either sold, bargained, traded or collateralized the said Note for its own benefit and use in direct criminal violation of Section 27 of the National Banking Act of 1864 which is still in full force and effect. Affiants' have good cause to believe that in the course of committing the foregoing wrongful acts, the Lender never invested or used any money of its own to fund the Note/Deed of Trust as it has represented to have done; nor has the Lender or any of its officers/employees, assigns, et al ever presented verified evidence to rebut any of the above.

Affiants' have good cause to believe that in the course of committing the foregoing wrongful acts, the Lender never invested or used any money of its own to fund the Note/Deed of Trust as it has represented to have done; nor has the Lender or any of its officers/employees, assigns, et al ever presented verified evidence to rebut any of the above.

7. By and through the affiants' signing of all the aforesaid financial instruments, the Lender caused affiants' to believe that a binding, lawful contract was created between the Lender, its agents, and assigns and the affiants'.

8. That prior to, and at the time of affiants' signing all the banks required financial instruments as instructed, affiants' were very unlearned and unsophisticated in such banking and financial matters, including a total lack of knowledge of all the various underlying, undisclosed details, particulars, and legal consequences pertaining to the same. To the contrary, the unsophisticated affiants' relied wholly and entirely upon the bank having "clean hands" operating in good faith and providing affiants' with full, complete and truthful disclosure of the entire financial transaction(s).

9. Regarding the document entitled Deed of Trust No. 20050201-0024868, affiants' have not been apprised of the verified accounting for the funds originally tendered at the closing of the purported loan referenced herein. Also, Affiants' has good cause to believe that no such true accounting or verification of funds has been forthcoming to date, because said accounting would reveal that the Lender has tendered little or no real valuable consideration from its own independent assets to fund this purported lending transaction.

10. It is the Affiants' understanding that the Lender herein acts as a for profit business with and through the Federal Reserve System (hereafter "FED" and the Depository Trust Company of New York (hereafter "DTC") to access and thereby expand the credit of its borrowers' individual private asset accounts held in private trust at the DTC. The Affiants' further understands from personal objective study that it is standard practice in America for "lending" institutions to tender its borrowers notes to the DTC in exchange for equivalent asset funds drawn from the borrower's individual private trust, which are then sent by FED wire back to the lender prior to the closing of any purported institutional "loan."

In this regard the Lender herein has failed to disclose the use of the Affiant's negotiable paper (i.e. Affiant's Note/Deed of Trust while trading as a for-profit entity on the bond and securities market through any of its interagency cohorts/institutions such as the DTC, the FED, Fannie Mae, Freddie Mac or otherwise, while also apparently failing to file IRS Form 1099 OID (Original Issue Discount) on each of the transactions referenced herein and sending a copy of said Form to the Affiants'.

11. Following the aforesaid financial transactions with the Lender, the Affiants' did further study and research regarding the Lender's loan process, and the Affiants' do reasonably and objectively conclude that the Lender did not in fact operate with clean hands or in good faith, nor did the Lender nor any of its officers/employees, provide full, compete and truthful disclosure of its underlying, undisclosed, secret intents. To the contrary, a close perusal of the Lender's internal accounting practices provides sufficient evidence to support the Affiants' following observations:

a.  The Affiants' have received no verified evidence to suggest that the Lender did not commit criminal acts not limited to fraudulent inducement, fraudulent misrepresentation, and fraudulent intent in its advertising and purported claim to have loaned its own funds to the Affiants'.

b.  The Affiants' have received no verified evidence to suggest that the Lender did fulfill its original promise/agreement to lend its own funds to the .Affiants'. Nor is there verified evidence to show that the Lender did sacrifice/contribute anything of intrinsic value or incur any risk/loss in the formation or outcome of the purported lending transactions referenced herein. In sum, there is no verified evidence that the Lender did sacrifice or contribute any valuable lawful consideration from which the Lender could suffer any loss, damage or injury.

c.  The Affiants' have received no verified evidence to suggest that the Lender did not arbitrarily and discretely endorse the Affiant's Note/Deed of Trust in violation of Section 27 of the National Banking Act of 1864, and that in so doing the Lender claimed said Note/Deed of Trust as its own, and converted it to a negotiable instrument for the Lender's sole benefit, use, and gain.

d.  The Affiants' have received no verified evidence to suggest that the Lender did not further compounded its predatory, wrongful, and fraudulent actions by inducing the Affiants' to sign a Deed of Trust, thereby granting additional third parties undeserving control, benefit, and interest in the Affiant's real property, i.e. Affiant's home, all under the guise of groundless "false prudence" and "false necessity".

e.  The Affiants' have received no verified evidence to suggest how the Notes/Mortgage/Trust Deed/Security Instruments created by the Lender's officers/employees, assigns, et al and signed only by the Affiants' could possibly constitute a lawful binding contract/agreement due to the Lender's acts of misfeasance, malfeasance, and nonfeasance as more particularly outlined above, in as much as the complete facts regarding any such contract/agreement, if fully disclosed, would reveal its unconscionable nature rendering it void from the beginning.

f.  The Affiants' have received no verified evidence to suggest that the Affiants' were ever provided full, complete, truthful and accurate disclosures, regarding all financial instruments that the Affiants' were compelled to sign, nor were the Affiants' fully or otherwise apprised of the true nature and exact particulars of the Lender's entire loan process. In the absence of receiving true, correct, and complete information as to ALL the details of the purported loan and the underlying disingenuous intentions of the lender, the Affiants' affirms that there is no evidence or foundation for anyone to claim that there was or could be, a "meeting of the minds" which is essential for the viability and enforcement of any and all contracts including the one referenced herein.

CITATION: "The meeting of the minds required to make a contract is not based on a secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which from all the circumstances should be known". McClintock v Skelly Oil Co, 232 Mo App 1204, 114 S.W. 2nd 181, 189.

g.  The Lender did also compel the Affiants' to purchase title insurance on the Affiant's mortgaged property, making the Lender and its assigns the beneficiary of said insurance, while no verified evidence has been presented to the Affiants' to show that the Lender did in fact invest any of its own valuable or lawful consideration into funding the Affiant's mortgage loan whereby the Lender could possibly incur any loss. Absent such verified evidence, the Lender was and remains undeserving of any such insurance benefit, and has wrongful imposed yet another unjust financial burden upon the Affiants'. As with the endorsement and conversion of the Affiant's note, courts of law throughout the United States consider any such unfounded impositions of cost and indemnity to be wrongful and deceitful actions involving fraudulent inducement, fraudulent misrepresentation, and unjust indemnification/enrichment.

h.  In the absence of receiving any explanation as to why the Lender through its officers, representatives, or beneficiaries did not sign the Contract/Note, there is no evidence to counter the appearance that the Lender did intentionally avoid its signed joinder to this contract to avoid documented evidence of engagement in the fraud referenced above, fraud which this contract clearly appears to contain to the point of being unconscionable in its purpose and vitiated from its inception.

I. The Affiants' have received no information or evidence from the Lender, its agents, assigns, or beneficiaries, et al that any of them are in fact the bona fide holder in due course or even a holder of value and bona fide owner of the promissory note in question, all of which would be necessary in order to initiate ANY form of collection action or foreclosure proceeding against the property alleged to have been pledged as collateral for a bona fide loan. Similarly, there is no evidence known to the Affiants' to show that the original promissory note in question is, and always has been the property of the Affiants', who has not knowingly or otherwise assigned, transferred or given it away for transfer, sale, benefit, or gain by a third party, all to the loss and detriment of the Affiants'.

12. The Affiants' are now and for the first time aware of significant new information as a result of personal research associated with seeking a remedy for the commercial injuries and loss recited above. To wit: Since the declaration of bankruptcy by the United States Corporation in June 1933, the only source of credit in our nation has been the encumbered economic energy of the American people as individuals, which since 1933 has been America's only commodity money substitute or backing for "legal tender" for both deposit and exchange. This condition is legislatively established by House Joint Resolution 192, dated June 5, 1933, which has been memorialized as public law in the U.S. Statutes at Large at Chap. 48, 48 Stat. 112. The Affiants' now realizes that since 1933, America has had no money, but only credit, and that all such credit belongs to and is drawn from the private trust accounts of each individual citizen. Hence, the Affiants' realizes that when anyone deals with an institutional "lender" he is in fact receiving funds that the lender has actually and deceptively drawn from the borrower's own private asset account.

Said credit has been created as a deemed "necessity" for the Treasury to have access to a valid collateral source for monetizing its debt instruments through the Federal Reserve banks. This monetization of debt instruments or "commercial paper" is the nation's only mechanism for creating so-called "money" used for all commercial exchange. The nature of such "funding" has been verified by the U.S. Department of Treasury as emanating from the UCC Contract Trust Account of a named trust/entity such as JUAN CARLOS ZAPATA and PATRICIA ULTRERAS bearing a UCC Contract Trust Account and a Treasury noted Exemption from Levy to include such other similar individual trusts as may exist.

IN CONCLUSION, based upon all of the directly and personally held knowledge and perceived facts and observations set forth above the Affiants' solemnly swears and believes that ALL Notes, Mortgages, Deeds of Trust or other such instruments entered into by the Affiants' under the inducements of the Lender, its agents, assigns, and beneficiaries have no legal force or binding effect, and are null and void from the beginning.

Date NOV 06, 2009

Juan Carlos Zapata

Patricia Ultreras

LAURA GUTIERREZ
Commission # 1850000
Notary Public - California
Santa Barbara County
My Comm. Expires May 18, 2013

JURAT

State of California )
                    ) ss.
County of Santa Barbara )

Sworn and Subscribed before me, a Notary Public, this 06 day of NOV,
20 09. Signor(s) did personally appear and prove identity to me by satisfactory evidence.

May 18, 2013
My Commission Expires
(SEAL)

Notary Public

Exhibit A, Page 70

1  Juan Carlos Zapata , and
    Patricia Ultreras
2  c/o 1660 Tapir Circle
    Ventura, California 93003
3  805-452-5736

4           **SUPERIOR COURT OF CALIFORNIA**
               **COUNTY OF VENTURA**

5

6  Real Party(s) In Interest(s):
7  JUAN CARLOS ZAPATA, and
    PATRICIA ULTRERAS, et al;

8           Plaintiffs,

9  Vs

10  HARBOURTON MORTGAGE INVESTMENT
     CORPORATION; and
11  AURORA LOAN SERVICES; and
     ROBERT E WEISS INCORPORATED, and
12  UGIE COMPANY.; and
     COUNTRYWIDE BANK, N.A.; and
13  BANK OF AMERICA, N.A.; and
14  MERS; and
     ANY SUBSIDIARIES OF THE ABOVE
15  NAMED DEFENDANTS; and
     ANY KNOWN OR UNKNOWN JOHN DOES
16
17           Defendants

Case No.:

**PLAINTIFFS'S VERIFIED EMERGENCY**

**MOTION FOR**

**TEMPORARY RESTRAINING ORDER**

**AND PRELIMINARY INJUNCTION**

Judge:

18      COMES NOW Plaintiffs/Petitioners, Juan Carlos Zapata and Patricia Ultreras, who herein move this

19  Honorable Court to enter a temporary restraining order or preliminary injunction granting Juan Carlos

     Zapata and Patricia Ultreras the relief sought in this motion.  In support of this motion, Juan Carlos Zapata

20  alleges and states as follows:

21  1.  As more fully set out in the Verified Complaint for Quiet Title and Demand for Trial By Jury as

22       entered into this Court in Case Number _____ on this 17____ day of December, 2009

23       and incorporated herein by reference, Defendants are attempting to encumber the property at 1660

        Tapir Circle, California 93003 (hereinafter, the "Property"), which is the subject of the Complaint,

24       by and through a Foreclosure Sale.

25  2.  Defendants have failed to provide any prima facie evidence that they are the holder in due course of

26       the original note and mortgage granting them authority to proceed in a foreclosure action, and/or any

27       Corporate Resolution or Power of Attorney granting or receiving the assignment rights of the holder

                                        Exhibit A, Page 71

3. Unless Defendants are temporarily and permanently enjoined from the acts set forth above, irreparable injury will be occasioned to Juan Carlos Zapata due to the nature and severity of Defendants' acts.

4. The Property is Plaintiffs' primary home and loss of this home will certainly cause irreparable harm, including, but not limited to, homelessness due to loss of property, loss of reputation due to homelessness, loss of standing in the community due to loss of reputation, loss of business opportunity due to loss of standing in the community, loss of income due to loss of business opportunity as well as intense emotional stress and mental anguish due to all of the above occurrences. Such will be occasioned unless a Temporary Restraining Order or Preliminary Injunction is granted in this case.

5. Defendants and associates have been moving against the Property since notice foreclosure of sale. However, the question of possession cannot be resolved until the question of title is resolved. Therefore, Defendants should be restrained by injunction from moving on the Property until the issue of title is resolved.

6. The interest of Juan Carlos Zapata in his Property outweighs the interests, if any, of any and all Defendants.

7. Juan Carlos Zapata, the Plaintiffs, have a likelihood of success on the merits of his suit and is entitled to equitable relief.

8. Issuance of injunctive relief against the Defendants will maintain the status quo between the parties.

9. WHEREFORE, Juan Carlos Zapata and Patricia Ultreras move this Court for the issuance of a Temporary Restraining Order, and upon proper hearing, Preliminary Injunction, enjoining the Defendants, their employees, agents, successors, or assigns, from making any effort to sell, or further encumber the title to, take possession of, or in any way occupy Juan Carlos Zapata's and Patricia Ultreras's property, harass or intimidate Juan Carlos Zapata and/or Patricia Ultreras in any manner and for such other and additional relief as the Court deems just and equitable, including a Preliminary Injunction at the earliest possible opportunity.

Respectfully submitted this __17__ day of December, 2009

Juan Carlos Zapata

Patricia Ultreras                Exhibit A, Page 72

Juan Carlos Zapata, and Patricia Ultreras
Pro Se
1660 Tapir Circle
Ventura, California
Tel: 805-452-5736

### NOTICE OF LIS PENDENS

NOTICE is hereby given, pursuant California Code of Civil Procedure Title 10 Actions in Particular Cases Chapter 4 Quiet Title Section 760.010(b), that a law suit is pending before the Superior Court of California, County of Ventura, by and between Juan Carlos Zapata and Patricia Ultreras, Plaintiffs, and Defendants HARBOURTON MORTGAGE INVESTMENT CORPORATION,; and AURORA LOAN SERVICES; and ROBERT E WEISS INCORPORATED; and UGIE COMPANY, and COUNTRYWIDE BANK, N.A..; and BANK OF AMERICA, N.A.; MERS; and ANY SUBSIDIARIES OF THE ABOVE NAMED DEFENDANTS; and ANY KNOWN OR UNKNOWN JOHN DOES:

Case No._____.

The outcome of the lawsuit is certain to affect the title of that certain residential real property located at 1660 Tapir Circle, Ventura, California 93003, and more particularly described as:

Parcel ID Number:    131-0-180-055

Legal Description:

LOT 338 OF TRACT 2256-3, IN THE CITY OF VENTURA, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGE(S) 22 TO 26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Dated this_____17_____day of December, 2009.

By:_____
                     Juan Carlos Zapata

By: _____
                   Patricia Ultreras

ACKNOWLEDGMENT

| County of Ventura | ) | |
| | ) | ss |
| State of California | ) | |

*On the _____ day of December, 2009 A.D., the above Principas personally appeared before me and proved to me on the basis of satisfactory evidence to be the man and woman whose name is subscribed to the within instrument (Notice of Lis Pendens) and acknowledged to me that he and she executed the same in his and her authorized capacity and that by his and her signatures on the instrument, the person or the entity upon behalf of which the person acted, signed under oath or asseveration, and accepts the truth thereof.*

_____
My Commission Expires
Seal

                                                  _____
                                                  Notary Public

Exhibit A, Page 74





HARLE CHILLE
ARLC CA 93003

Bank of America Legal Order
Processing Building c
2595 W. Chandler Blvd
Mailcode: AZ1-804-01-05
Chandler, AZ 85224

CERTIFIED MAIL

7008 1830 0003 5944 0346

U.S. POSTAGE
BLOOMINGTON CA
92316
DEC 21 09
AMOUNT
$7.85
00038652-10

UNITED STATES
POSTAL SERVICE
1000
85224

Exhibit A, Page 75